UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LUMINOR CONSULTING CORP.; ) <br> DLC ELITE LENDING CORPORATION; ) <br> HEARD CONCRETE CONSTRUCTION ) <br> CORP.; THOMAS DAVIS; and ) <br> KEVIN HARRISON, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. )   Civil Action No. _____ <br> ) <br> DR. ADEL ELMESSIRY and ) <br> WEBDBTECH, INC., ) <br> ) <br>     Defendants. ) | |

## COMPLAINT

NOW COME the Plaintiffs, Luminor Consulting Corp. ("Luminor"), DLC Elite Lending Corporation ("DLC"), Heard Concrete Construction Corp. ("Heard"), Thomas Davis ("Davis") and Kevin Harrison ("Harrison") (collectively, the "Plaintiffs"), by counsel, for their Complaint against Defendants, Dr. Adel Elmessiry ("Elmessiry") and WebDBTech, Inc. (the "Company") (collectively, the "Defendants"), and hereby states as follows:

### The Parties

1. Luminor is a Canadian corporation with its principal place of business located at 708-333 11th Avenue, Vancouver, British Columbia, Canada V5T 0H1.

2. DLC is a Canadian corporation with its principal place of business located at Unit A201-9000 Bill Fox Way, Burnaby, British Columbia, Canada V5J 5J3.

3. Heard is a Virginia corporation with its principal place of business located at 201 A Dexter Street West, Ste. 100, Chesapeake, Virginia 23324.

4. Davis is an individual who is domiciled in Spain.

5. Harrison is an individual who is domiciled in Virginia.

6. Elmessiry is an individual domiciled in Tennessee who may be served with process at 9370 Bournsmouth Ct., Brentwood, Tennessee 37027.

7. The Company is a Delaware corporation with its principal place of business located at 9370 Bournsmouth Ct., Brentwood, Tennessee 37027. The Company may be served with process by serving its registered agent, Harvard Business Services, Inc., at 16192 Coastal Highway, Lewes, Delaware 19958.

## Subject Matter Jurisdiction

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

## Personal Jurisdiction

9. This Court has personal jurisdiction over the Defendants because, among other reasons, Elmessiry is a resident of Tennessee transacting business in Tennessee and the Company has its principal place of business in Tennessee.

## Venue

10. Venue is proper in this Court because, among other reasons, it is a permissible venue under 28 U.S.C. § 1391 as a district in which Elmessiry resides and in which the Company is subject to the Court's personal jurisdiction.

## Statement of Facts

11. On or about July 1, 2021, Elmessiry entered into a *de facto* or general partnership with the Plaintiffs (the "Partnership") for the purpose of undertaking to develop software for an innovative, renewable energy-based cryptocurrency protocol called Renewable Obligation Base Energy Economy (or "ROBe2 Protocol").

12. At this same time, the Plaintiffs and Elmessiry entered into an oral contract regarding the Partnership. The Plaintiffs agreed to provide funding for the development of the ROBe2 Protocol as well as assist with various other tasks related to legal issues and company structure, financial development, engineering, and other administrative tasks. Elmessiry agreed to also provide funding in the amount of $800,000, develop the software (data access object or DAO, smart contracts, tokens/NFTs, etc.) for the ROBe2 Protocol, create marketing materials and a website, and otherwise assist in day-to-day operations.

13. In total, the Plaintiffs contributed $698,647 toward the Partnership and the development of the ROBe2 Protocol as follows:

| Party | Amount | Date |
|---|---|---|
| Luminor | $100,000 | 6/17/2021 |
| Luminor | $66,667 | 9/2/2021 |
| Heard | $44,333.33 | 9/8/2021 |
| Davis | $44,333.33 | 9/8/2021 |
| Harrison | $44,333.33 | 9/8/2021 |
| DLC | $132,990 | 9/13/2021 |
| Heard | $44,333.33 | 10/27/2021 |
| Davis | $44,333.33 | 10/27/2021 |
| Harrison | $44,333.33 | 10/27/2021 |
| DLC | $132,990 | 11/5/2021 |

(the "Funds"). The Funds were wired by the Plaintiffs to an account held by the Company, which was owned by Elmessiry, to be held temporarily pending the incorporation of an entity for the Partnership.

14. Once the Partnership entity was formed, the remaining Funds plus Elmessiry's $800,000 contribution were to be wired to an account created for the Partnership.

15. As a part of their verbal agreement, the Plaintiffs and Defendant agreed that the parties would not be paid any compensation for their work on the Partnership's ROBe2 Protocol. Instead, the Plaintiffs and Elmessiry agreed to contribute money and time to develop the ROBe2 Protocol and, in exchange, they would each receive a designated portion of NFT tokens after the ROBe2 Protocol was completed.

16. Elmessiry was not an employee of the Partnership or any individual Plaintiff.

17. The Plaintiffs paid their contributions to the Partnership, but Elmessiry never made his financial contribution. Elmessiry's contribution was to be made in tranches, and Elmessiry lead the Plaintiffs to believe that he had been timely paying his share of the tranches into the Company's bank account and/or to developers that had been hired to work on the ROBe2 Protocol. However, these representations were false. Elmessiry had not made any portion of his $800,000 contribution to the Partnership for the ROBe2 Protocol.

18. In a document signed November 8, 2021, the Universal Peace and Sustainability, LLC ("UPS"), an entity affiliated with the United Nations, entered into a Memorandum of Understanding with Global Renewable Energy Network, LTD ("GREN"), an entity affiliated with the Partnership, to confirm an investment by UPS of $25 million, through a "Partner NFT," into the ROBe2 Protocol's research and development.

19. Under this Memorandum of Understanding, GREN was required to provide material on the ROBe2 Protocol and work with UPS to utilize the ROBe2 Protocol to promote the use of renewable energy.

20. The first phase of the development period for the ROBe2 Protocol began on July 1, 2021 and was set to end November 30, 2021.

21. During the first phase of the development period, Elmessiry began asking for additional money and/or compensation from the Plaintiffs, yet there was no tangible progress being provided to the Plaintiffs and the parties had previously agreed not to receive compensation. Further, the sums requested by Elmessiry seemed outlandish for the kind of work that needed to be done.

22. The Plaintiffs continuously requested invoices for the developers Elmessiry was using, plus a report showing proof of the tangible progress made by Elmessiry, but Elmessiry failed to provide either of them to the Plaintiffs.

23. Meanwhile, because the Plaintiffs believed Elmessiry was meeting his obligations with the ROBe2 Protocol, both financially and executing on the development, the Plaintiffs and Elmessiry were also working on making the Company a public company. This required audited financial statements of the Company. Around September of 2021, Elmessiry reached out to the Plaintiffs for assistance in completing this audit, which included hiring a CPA to bring the financial records up to date. During this process, Elmessiry provided all the bank statements of the Company to Plaintiffs.

24. During November of 2021, the Plaintiffs discovered that Elmessiry and/or the Company had, without authorization, wired most of the Funds from the Company's account to unknown individuals as well as Elmessiry's personal bank account.

25. Elmessiry has refused to provide supporting documentation showing how all of the Funds were used.

26. However, upon information and belief, nearly all of the Funds were used for Elmessiry's personal benefit, including renovating Elmessiry's house in Egypt. This was not proper because, among other reasons, Elmessiry was not entitled to compensation for his work on the ROBe2 Protocol, and the Plaintiffs did not authorize these expenditures.

27. Elmessiry purportedly used approximately $20,000 of the Funds to create a website for the ROBe2 Protocol. However, this use of the Funds, plus all other use of the Funds, by Elmessiry were done without prior authorization from the Plaintiffs.

28. To this day, Elmessiry has kept (along with the converted Funds) all of the NFT tokens, provisional patents, and marketing materials for himself and refused to give the operational keys and access codes for the ROBe2 Protocol and the affiliated website to any of the Plaintiffs.

29. Additionally, because of Elmessiry's actions, GREN was unable to move forward with the Memorandum of Understanding with UPS and create a partnership agreement by the designated deadline of December 1, 2021.

30. An Extended Memorandum of Understanding was entered into on or about December 1, 2021, which expanded the scope of the parties' business relationship by more clearly identifying each parties' roles, rights, and responsibilities. It outlined how the development of the ROBe2 Protocol would be used to support and expand renewable energy production throughout the world and identified the intent for it to be the cryptocurrency used by the United Nations. This relationship was material to the development of the ROBe2 Protocol.

31. In the Extended Memorandum of Understanding, the parties also agreed to extend the deadline for creating their partnership agreement to January 30, 2022, for the purpose of gathering and providing the materials required for due diligence.

32. From December 1, 2021 to January 30, 2022, the Plaintiffs requested all of the work performed/products created by Elmessiry, to date, on the ROBe2 Protocol so that they could complete the due diligence required under the Extended Memorandum of Understanding. However, Elmessiry never provided them with any tangible work performed on the ROBe2 Protocol.

33. Because of Elmessiry's actions, including his refusal to turn over Partnership property related to the ROBe2 Protocol, such as operational keys and access codes, the development of the ROBe2 Protocol has been stalled and, thus, the partnership agreement with UPS was not able to move forward.

34. This loss of a $25,000,000 USD funding opportunity has had a detrimental impact on the Partnership and the development of its ROBe2 Protocol.

## COUNT I
## BREACH OF ORAL CONTRACT
*(as to Elmessiry)*

35. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

36. The Plaintiffs and Elmessiry entered into an oral contract on or around July 1, 2021 to form a Partnership for the purpose of developing the ROBe2 Protocol.

37. The oral contract required Elmessiry to provide software development services for the ROBe2 Protocol and assist with other tasks, without compensation, as well as to contribute $800,000 to the Partnership.

38. The Plaintiffs wired the Funds to the Company for temporary holding on behalf of the Partnership and to be used, with authorization, for Partnership purposes.

39. Elmessiry, instead of using the Partnership Funds for Partnership purposes, used the Funds for improper and unapproved purposes.

40. Elmessiry transferred the Funds to unknown individuals and his own personal bank account for his personal benefit and without authorization. To the extent Elmessiry claims this was compensation for his work on the ROBe2 Protocol, this is not proper because the parties specifically agreed that they would not receive compensation other than in the form of NFTs after the ROBe2 Protocol was completed.

41. In addition, Elmessiry never provided his $800,000 contribution to the Partnership, as required by the parties' oral agreement.

42. Finally, Elmessiry refuses to provide the Plaintiffs with access to Partnership property, including but not limited to, any operational keys and access codes for the ROBe2 Protocol and the affiliated website.

43. Elmessiry breached the oral contract by: 1.) using the Funds for improper and unauthorized purposes that were not related to the development of the ROBe2 Protocol or any other approved Partnership purposes; 2.) failing to contribute his $800,000 share of the funding for the Partnership; 3.) failing to complete software development for the ROBe2 Protocol and other tasks assigned to Elmessiry; and 4.) by refusing to return Partnership property created for the Partnership pursuant to the oral contract, including any operational keys and access codes for the ROBe2 Protocol and affiliated website, among other things.

44. As a result of Elmessiry's breach, the Plaintiffs and the Partnership have suffered injuries in the amount of: 1.) Elmessiry's unpaid $800,000 contribution to the Partnership; 2.) the amount of the Funds that were used improperly and without authorization by Elmessiry; and 3.) the value of the products created by Elmessiry pursuant to the oral contract that he refuses to give to the Plaintiffs.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. That the Court award to the Plaintiffs direct damages against Elmessiry in the amount of $1,500,000 or such other amount as proven at trial; and

B. Such other and further relief as this Court determines is just and reasonable.

## COUNT II
## CONVERSION
### *(as to Elmessiry and the Company)*

45. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

46. The Defendants were entrusted to use and hold the Funds in the Company's bank account, temporarily, for the benefit of the Partnership until a partnership entity was created.

47. Upon information and belief, Elmessiry is the sole director and shareholder of the Company.

48. The Plaintiffs collectively wired the Funds, a determinative sum of $698,647, to the Company for the exclusive purpose of being used to develop the ROBe2 Protocol or for other approved Partnership purposes.

49. The Funds were the property of the Partnership formed between the Plaintiffs and Elmessiry.

50. The Funds were not to be used as compensation or for any other personal purposes of Elmessiry and/or the Company.

51. Elmessiry and/or the Company, without authorization, transferred or paid $698,647 of the Funds to unknown individuals' bank accounts and used it for improper and unapproved personal purposes in defiance of the Partnership and the Plaintiffs' rights.

52. The Defendants knew that they did not have proper authority and that their use of the Funds was in contravention of, and inconsistent with, the Partnership's rights of ownership.

53. Due to the Defendants' conversion, the Plaintiffs and the Partnership have been damaged.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. That the Court award to the Plaintiffs direct damages against the Defendants in the amount of $698,647 or such other amount as proven at trial; and

B. Such other and further relief as this Court determines is just and reasonable.

### COUNT III
### FRAUD
### *(as to Elmessiry)*

54. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

55. Elmessiry falsely represented that he was working on the ROBe2 Protocol and using the Funds to further the development of the ROBe2 Protocol, including to support the investment opportunity and milestones created by the Memorandum of Understanding between GREN, on behalf of the Partnership, and UPS.

56. Elmessiry also falsely represented that he had been providing his $800,000 portion of the financial contributions toward the Partnership's efforts and the ROBe2 Protocol into the Company's bank account.

57. Elmessiry knew that his representations were false at the time they were made and intended to deceive the Plaintiffs into entering into the oral contract for the Partnership and continuing to financially support the ROBe2 Protocol.

58. The Plaintiffs justifiably relied on the false representations from Elmessiry and, consequently, entered into and continued to operate the Partnership and its efforts on the ROBe2 Protocol.

59. As a direct and proximate result of Elmessiry's actions, the Plaintiffs and the Partnership have been damaged.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. Direct damages in the amount of $1,448,647;

4859-0301-7257.1

Page 10 of 13
Case 3:22-cv-00555   Document 1   Filed 07/25/22   Page 10 of 13 PageID #: 10

B.  Reasonable attorney's fees and costs based upon the intentional fraud described herein;

C.  Punitive damages of $500,000 based upon Elmessiry's intentional acts of fraud and deception; and

D.  Such other and further relief as this Court determines is just and reasonable.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
*(as to Elmessiry)*

60. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

61. As a member of the Partnership, Elmessiry owed fiduciary duties to the Plaintiffs in all matters pertaining to the Partnership.

62. Elmessiry converted and/or improperly used the Partnership Funds without the consent of the Plaintiffs. He also failed to provide his agreed upon financial contribution to the Partnership.

63. Elmessiry also refuses to return Partnership property, including valuable information and access codes that are essential to continuing the work of the Partnership on the ROBe2 Protocol.

64. These actions benefited Elmessiry and are a breach of Elmessiry's fiduciary duties to the Plaintiffs.

65. Elmessiry's actions have given him an advantage, divorced from the Partnership, that has caused injury to the Plaintiffs and the Partnership.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A.  Direct damages in the amount of $1,500,000;

B. Reasonable attorney's fees and costs;

C. Pre-judgement interest; and

66. Such other and further relief as this Court determines is just and reasonable

### COUNT V
### PROMISSORY ESTOPPEL
### (as to Elmessiry)

67. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

68. Elmessiry promised to work on the ROBe2 Protocol and use the Funds to further the development of the ROBe2 Protocol, including to support the investment opportunity and milestones created by the Memorandum of Understanding between GREN, on behalf of the Partnership, and UPS.

69. Elmessiry also promised to provide his $800,000 portion of the financial contributions toward the Partnership's efforts and the ROBe2 Protocol.

70. These promises were unambiguous and not unenforceably vague.

71. The Plaintiffs reasonably relied on Elmessiry's promises and, as a result, wired the Funds into the Company's bank account and continued to invest their time, efforts, and funds into the ROBe2 Protocol and Partnership.

72. The Plaintiffs also reasonably relied on Elmessiry's promises to timely provide tangible work product in order to meet the due diligence requirements under the Extended Memorandum of Understanding.

73. As a direct and proximate result of Elmessiry's actions, the Plaintiffs and the Partnership have been damaged.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. Direct damages in the amount of $1,448,647;

B. Reasonable attorney's fees and costs; and

C. Such other and further relief as this Court determines is just and reasonable.

## JURY TRIAL DEMANDED

The Plaintiffs demands a trial by jury for all issues so triable.

Respectfully submitted,

s/ Charles H. Williamson
Charles H. Williamson (TN BPR 018287)

WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: charley.williamson@wallerlaw.com

Of counsel:

Christopher D. Davis (VSB No. 74809)
(*Pro Hac Vice* application to be filed)
Destinee B. Byers (VSB No. 94691)
(*Pro Hac Vice* application to be filed)
DAVIS LAW, PLC
555 Belaire Ave., Ste. 340
Chesapeake, Virginia 23320
Telephone: (757) 410-2293
Facsimile: (757) 257-8614
Email: chris@davislawplc.com
destinee@davislawplc.com

*Attorneys for Luminor Consulting Corporation; DLC Elite Lending Corporation; Heard Concrete Construction Corp.; and Kevin Harrison*