UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LUMINOR CONSULTING CORP.; DLC ELITE LENDING CORPORATION; HEARD CONCRETE CONSTRUCTION CORP.; THOMAS DAVIS; and KEVIN HARRISON, <br><br> Plaintiffs, <br><br> v. <br><br> DR. ADEL ELMESSIRY and WEBDBTECH, INC., <br><br> Defendants/Counter-plaintiff, <br><br> v. <br><br> LUMINOR CONSULTING CORP., EMTECH, HEARD CONCRETE CONSTRUCTION CORP., ANISH PABARI, ROB ABENANTE, TOM DAVIS, and JEFFREY HOU YIN HO, <br><br> Counter-defendants. | Civil Action No. 3:22-cv-555 <br> Judge Eli J. Richardson <br> Magistrate Judge Frensley <br><br> JURY DEMAND |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COUNTS III AND IV OF THE DEFENDANT WEBDBTECH, INC.'S COUNTERCLAIM**

Counterclaim Defendants Luminor Consulting Corporation ("Luminor"), Thomas Davis ("Davis"), Anish Pabari, Jeff Hou Yin Ho, Heard Concrete Construction Corporation ("Heard"), and EMTech, by Davis and Heard (collectively, the "Counter-defendants"), by counsel, and for their Memorandum in Support of their Motion to Dismiss Counts III and IV of the Counterclaim

4874-8924-4471.1

1

filed by the Defendant and Counterclaim Plaintiff, WebDBTech, Inc. ("Counter-plaintiff") state as follows:

## Introduction

The Counter-plaintiff claims to be a victim. In support of its position, it provides unsupported allegations regarding work it claims it completed and backdated Software Development Services Agreements, some of which are unsigned, in an attempt to confuse the issues. The reality is that Dr. Elmessiry, not the Counter-plaintiff, was engaged to work on the ROBe2 Protocol as a member of a partnership with the Plaintiffs in this matter.

Dr. Elmessiry was given a reasonable opportunity to meet development goals and guidelines and never once provided tangible work product or proof of any work done in support of the ROBe2 Protocol. Once discussion began about taking the partnership's company public, Dr. Elmessiry attempted to "clean house" by creating backdated agreements that he could show the CPAs reviewing the partnership's accounts, including the funds that had already been wired to his company, the Counter-plaintiff, to be held for the benefit of the partnership.

The Counter-plaintiff's sole connection in all of this is that its bank account was used to hold the partnership's funds until a partnership account could be created. However, instead of using these funds as required, Dr. Elmessiry and the Counter-plaintiff converted the funds for their own use and benefit. Now, in a brazen effort to defend the claims against it, the Counter-plaintiff alleges claims against the Counter-defendants that it cannot support with pleadings that are insufficient as a matter of law.

## Legal Standard

A motion to dismiss challenges the legal sufficiency of a complaint or, in this case, a counterclaim. *See Weaver v. Prudential Ins. Co. of Am.*, 763 F.Supp.2d 930, 937 (M.D. Tenn.

2010). "To survive such a motion, a [pleading] need not contain 'detailed factual allegations,' but it must contain more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing this counterclaim, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. Instead, "[o]nly well-pleaded facts are construed liberally in favor of the party opposing the motion to dismiss." *Id.*

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). However, "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 Fed. Appx. 343 (6th Cir. 2013).

### Argument

At issue here is whether the Counter-plaintiff can maintain its causes of action in its Counterclaim under Count III (Unjust Enrichment) and Count IV (Conversion).

**A. Count III Should Be Dismissed Because The Counter-Plaintiff Did Not Plead That It Conferred A Benefit To The Counter-Defendants Or That Any Supposed Benefit Was "Unjust."**

To properly plead unjust enrichment, one must plead: "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Wilson Bank & Trust v. Consol Util. Dist.*, 2022 Tenn. App. LEXIS 228 at *26 (2022). The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust. *Id.* An unjust enrichment case "must be examined in light of its factual situation and decided according to the essential elements of unjust enrichment." *Lascassas Land Co., LLC v. Allen*, 2020 Tenn. App. LEXIS 189, at *21 (2020).

Nonetheless, an indirect benefit that is too attenuated from the plaintiff does not support a claim for unjust enrichment. *Coffey v. Coffey*, 578 S.W.3d 10, 26 (Tenn. Ct. App. 2018).

Counter-plaintiff has not sufficiently alleged that it conferred a benefit to the Counter-defendants. Counter-plaintiff alleges that the Counter-defendants were unjustly enriched by 1.) the funds received from investors for the ROBe2 Protocol and 2.) the NFTs provided to the investors by the Counter-plaintiff. Countercl. ¶40. The link between the Counter-plaintiff and Counter-defendants is beyond attenuated when it comes to these benefits.

In *Abriq v. Hall*, 295 F. Supp.3d 874, 882–83 (M.D. Tenn. 2018), the Court granted the Defendant Metropolitan Government's ("Metro") Motion to Dismiss Plaintiff's unjust enrichment claim because the "alleged connection between Plaintiff and any benefits received by Metro from ICE [Immigration and Customs Enforcement] [was] too attenuated to support a claim that Plaintiff, even indirectly, conferred benefits upon Metro." There, the Plaintiff alleged that "Metro received money for housing immigration detainees, including Plaintiff, from the federal government." *Id.* at 883. However, the only benefit the Plaintiff appeared to allege was that somehow "his detention by ICE and placement in Metro's facility served to confer a benefit to Metro." *Id.* This was not enough to support a connection between the Plaintiffs and any benefits Metro received from ICE. *Id.*; *see also Coffey v. Coffey*, 578 S.W.3d 10, 26 (Tenn. Ct. App. 2018)(where the Plaintiff's transfer, as the residuary beneficiary of the estate and family trust, eventually resulted in the $45,000,000 sale of her deceased husband's business but was too attenuated to support an unjust enrichment claim for the proceeds from the sale of the business).

As for the investor funds, just like in *Abriq* where Metro receiving money from ICE that it used to support numerous people, including the Plaintiff, was too attenuated of a benefit to support unjust enrichment against Metro, third party investors sending funds in support of the

4874-8924-4471.1

ROBe2 Protocol, which Counter-plaintiff claims to have done work for, is too attenuated to support unjust enrichment against the Counter-defendants. In *Metro*, at least the Defendant was the one who allegedly received the money. In this case, the Counter-defendants are not even alleged to have received or retained the money.

The Counter-plaintiff alleges that, based only on its knowledge from outside sources, that the Counter-defendants "obtained ***investors*** for the ROBe2 protocol." Countercl. ¶39 (emphasis added). This allegation does not support that any money actually changed hands; only that investors were on board and perhaps ready and waiting. While the Counter-plaintiff goes on to say that Counterdefendants have been unjustly enriched by the "funds received from these investors," it never directly says that Counterdefendants were in fact the ones that received and held the funds or how it would know that based on "publicized media articles and signed investor acknowledgements." *See* Countercl. ¶¶ 39–40; *see also* Countercl. ¶¶ 23, 39 (alleging only that investors are sending money for the *ROBe2 Protocol*). Plus, there are no pleadings to support that any or all of the investor's funds for the ROBe2 Protocol were intended to be given to the Counter-plaintiff and that the Counter-plaintiff, by not receiving it, thereby conferred a benefit on the Counter-defendants, or even a more rudimentary allegation that the Counter-defendants retained any of those investor funds for their own benefit. *See generally*, Countercl.

Similarly, the NFTs allegedly provided by the Counter-plaintiff to the investors are too attenuated to support unjust enrichment. It is not clear from the pleadings what benefit, if any, Counter-defendants would receive from the investors receiving the NFTs. Is it investor satisfaction? Or the possibility of continuing relationships? Alternatively, do the NFTs even have any monetary value, especially in light of the fact that the partnership ended before the ROBe2 Protocol work was completed? As pled, there is no direct or indirect benefit to the

Counterdefendants based on the Counterplaintiff sending NFTs, related to an unfinished project and worth an indeterminate value, to third party investors.

As an additional and separate basis, Counter-plaintiff also has not sufficiently alleged that the Counter-defendants' retention of any "benefit" would be inequitable. The Counter-plaintiff alleges that it and the Counter-defendants were working together in a partnership, and Counter-plaintiffs even allege there was a contract between at least some of the parties. Countercl. ¶¶ 14–16. It would appear that the development of the NFTs is at least partially covered, if not fully covered by the Services, in those written agreements. *See* Countercl. at Ex. A–D. To the extent any benefit was in fact conferred on the Counter-defendants, the Counter-plaintiff acknowledges that it was at least partially paid for the work it allegedly performed under the written Agreements, and it is not clear that the "benefits" set out in the pleadings fell within the scope of any additional, oral agreements. Countercl. ¶19 (the Counter-defendant received $698,647); *see generally*, Countercl. Here, the Counter-plaintiff clearly received some benefit, and, thus, the Counter-defendants retaining any supposed "goodwill" based on the investors receiving their NFTs or other unspecified benefit from an unknown amount of investor funds given for the ROBe2 Protocol is not unjust.

Ultimately, the Counter-plaintiff's unjust enrichment claim must fail because any benefit is too attenuated and has not been properly pled.

B. **Count IV Should Be Dismissed Because The Counter-plaintiff Did Not Plead A Proper Claim For Conversion Because The Property Was Intangible, Did Not Belong To The Counter-plaintiff, And Was Not Under The Control Of The Counter-defendants.**

"Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012). In order to properly

4874-8924-4471.1

6

plead conversion, the party must show: "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *Id.* There are three ways for property to be converted:

> [f]irst, a person may personally dispossess another of ***tangible*** personalty . . . [s]econd, a person may dispossess another of ***tangible*** property through the active use of an agent . . . [and] [t]hird under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for 'receiving a chattel.'

*Id.* (emphasis added).

The Counter-plaintiff's sole allegation for conversion is that the Counter-defendants "improperly converted the NFTs provided to them by WebDBTech." Countercl. ¶ 44. The allegation does not state a cognizable claim to relief. The claim is devoid of *any* factual allegations that would make the allegation plausible, necessitating its dismissal. *See Weaver*, 763 at 937. Additionally, the factual allegations preceding Counter-plaintiff's bare assertion and incorporated by reference into the claim do not substantiate the claim for three primary reasons.

*First and foremost*, NFTs are intangible assets. As a result, they do not form a proper basis for conversion. *See Knox Trailers, Inc. v. Maples*, 2022 U.S. Dist. LEXIS 13230 at *29 (E.D. Tenn. 2022)(affirming that "Tennessee law does not recognize a cause of action for the conversion of intellectual or intangible property").

*Second*, the NFTs are not the property of the Counter-plaintiff. Per the Software Development Services Agreements attached to and incorporated by reference in the Counterclaim (the "Agreements"), any Intellectual Property (a defined term in the Agreements), which has been created in relation to and in the course of the Services (a defined term in the Agreements) provided pursuant to the Agreement is "work made for hire for the benefit of the Company." *See, e.g.*, Ex. A, ¶ 8. In each Agreement, the "Company" is not the Counter-plaintiff.

*See* Countercl. at Ex. A-D, ¶8. Consequently, per the Counter-plaintiff's pleadings and attached exhibits, the NFTs, which are Intellectual Property created in relation to the ROBe2 Protocol (*see* Countercl. ¶¶ 15, 23), were all assigned to other parties and are not the property of the Counter-plaintiff.

*Finally*, the NFTs are not being used for the Counter-defendants benefit nor are they exercising control over them. As pled, the investors, not the Counter-defendants, have possession of the NFTs. Countercl. ¶ 23. Thus, the Counter-plaintiff has not pled with particularity (and cannot do so) that the Counter-defendants have appropriated the NFTs for their own use and benefit. For these reasons, the Counter-plaintiff's claim for Conversion should be dismissed.

Therefore, since the Counter-plaintiff has not pled any facts which support its claims for unjust enrichment or conversion, Counts III and IV, respectively, should be dismissed.

Respectfully submitted,

s/ Charles H. Williamson
Charles H. Williamson (TN BPR 018287)

WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: charley.williamson@wallerlaw.com

Of counsel:

Christopher D. Davis (VSB No. 74809)
(Admitted *Pro Hac Vice*)
Destinee B. Byers (VSB No. 94691)
(Admitted *Pro Hac Vice*)
DAVIS LAW, PLC
555 Belaire Ave., Ste. 340
Chesapeake, Virginia 23320

Telephone: (757) 410-2293
Facsimile: (757) 257-8614
Email: chris@davislawplc.com
         destinee@davislawplc.com

*Attorney for Luminor Consulting Corporation; DLC Elite Lending Corporation; Heard Concrete Construction Corp.; Thomas Davis; Kevin Harrison; Anish Pabari; and Jeff Hou Yin Ho*

# CERTIFICATE OF SERVICE

       I hereby certify that on October 7, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

    Thomas Anthony Swafford, Esq.
    Tara L. Swafford, Esq.
    Elizabeth G. Hart, Esq.
    THE SWAFFORD LAW FIRM, PLLC
    321 Billingsly Court, Suite 19
    Franklin, Tennessee 37067
    Telephone: (615) 499-8406
    Facsimile: (615) 807-2355
    Email: tony@swaffordlawfirm.com
             tara@swaffordlawfirm.com
             betsy@swaffordlawfirm.com

*Counsel for Defendant and Counter-Plaintiff WebDBTech, Inc.*

                         /s/ Charles H. Williamson
                         Charles H. Williamson

                         *Attorney for Luminor Consulting Corporation; DLC Elite Lending Corporation; Heard Concrete Construction Corp.; Thomas Davis; Kevin Harrison; Anish Pabari; and Jeff Hou Yin Ho*