| | |
|---|---|
| LUMINOR CONSULTING CORP.; ) <br> ANISH PABARI; JEFF HOU YIN HO; ) <br> HEARD CONCRETE CONSTRUCTION ) <br> CORP.; THOMAS DAVIS; and ) <br> KEVIN HARRISON, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> DR. ADEL ELMESSIRY and ) <br> WEBDBTECH, INC., ) <br> ) <br>     Defendants/Counterplaintiff, ) <br> ) <br> v. ) <br> ) <br> LUMINOR CONSULTING CORP.; ) <br> EMTECH, HEARD CONCRETE ) <br> CONSTRUCTION CO., ANISH PABARI, ) <br> ROB ABENANTE, TOM DAVIS, and ) <br> JEFFREY HOU YIN HO, ) <br> ) <br>     Counterdefendants. ) | Civil Action No. 3:22-CV-00555 <br> Judge Eli J. Richardon <br> Magistrate Judge Frensley <br><br> JURY DEMAND |

# FIRST AMENDED COMPLAINT

NOW COME the Plaintiffs, Luminor Consulting Corp. ("Luminor"), Anish Pabari ("Pabari"), Jeff Hou Yin Ho ("Ho"), Heard Concrete Construction Corp. ("Heard"), Thomas Davis ("Davis") and Kevin Harrison ("Harrison") (collectively, the "Plaintiffs"), by counsel, for their First Amended Complaint against Defendants, Dr. Adel Elmessiry ("Elmessiry") and WebDBTech, Inc. (the "Company") (collectively, the "Defendants"), and hereby states as follows:

## The Parties

1. Luminor is a Canadian corporation with its principal place of business located at 708-333 11th Avenue, Vancouver, British Columbia, Canada V5T 0H1.

2. Pabari is an individual who is domiciled in Canada.

3. Ho is an individual who is domiciled in Canada.

4. Heard is a Virginia corporation with its principal place of business located at 201 A Dexter Street West, Ste. 100, Chesapeake, Virginia 23324.

5. Davis is an individual who is domiciled in Spain.

6. Harrison is an individual who is domiciled in Virginia.

7. Elmessiry is an individual domiciled in Tennessee who may be served with process at 9370 Bournsmouth Ct., Brentwood, Tennessee 37027.

8. The Company is a Delaware corporation with its principal place of business located at 9370 Bournsmouth Ct., Brentwood, Tennessee 37027. The Company may be served with process by serving its registered agent, Harvard Business Services, Inc., at 16192 Costal Highway, Lewes, Delaware 19958.

## Subject Matter Jurisdiction

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

## Personal Jurisdiction

10. This Court has personal jurisdiction over the Defendants because, among other reasons, Elmessiry is a resident of Tennessee transacting business in Tennessee and the Company has its principal place of business in Tennessee.

### Venue

11. Venue is proper in this Court because, among other reasons, it is a permissible venue under 28 U.S.C. § 1391 as a district in which Elmessiry resides and in which the Company is subject to the Court's personal jurisdiction.

### Statement of Facts

12. On or about July 1, 2021, Elmessiry entered into a *de facto* or general partnership with the Plaintiffs (the "Partnership") for the purpose of undertaking to develop software for an innovative, renewable energy-based cryptocurrency protocol called Renewable Obligation Base Energy Economy (or "ROBe2 Protocol").

13. At this same time, the Plaintiffs and Elmessiry entered into an oral contract regarding the Partnership. The Plaintiffs agreed to provide funding for the development of the ROBe2 Protocol as well as assist with various other tasks related to legal issues and company structure, financial development, engineering, and other administrative tasks. Elmessiry agreed to also provide funding in the amount of $750,000, develop the software (data access object or DAO, smart contracts, tokens/NFTs, etc.) for the ROBe2 Protocol, create marketing materials and a website, and otherwise assist in day-to-day operations.

14. In total, the Plaintiffs contributed $698,647 toward the Partnership and the development of the ROBe2 Protocol as follows:

| Party | Amount | Date |
|---|---|---|
| Luminor | $100,000 | 6/17/2021 |
| Luminor | $66,667 | 9/2/2021 |
| Heard | $44,333.33 | 9/8/2021 |
| Davis | $44,333.33 | 9/8/2021 |

| Harrison | $44,333.33 | 9/8/2021 |
| Ho | $132,990 | 9/13/2021 |
| Heard | $44,333.33 | 10/27/2021 |
| Davis | $44,333.33 | 10/27/2021 |
| Harrison | $44,333.33 | 10/27/2021 |
| Anish | $132,990 | 11/5/2021 |

(the "Funds"). The Funds were wired by the Plaintiffs to an account held by the Company, which was owned by Elmessiry, to be held temporarily pending the incorporation of an entity for the Partnership.

15. Once the Partnership entity was formed, the Funds plus Elmessiry's $750,000 contribution were to be wired to an account created for the Partnership.

16. As a part of their verbal agreement, the Plaintiffs and Defendant agreed that the parties would not be paid any compensation for their work on the Partnership's ROBe2 Protocol. Instead, the Plaintiffs and Elmessiry agreed to contribute both money and time to develop the ROBe2 Protocol and, in exchange, they would each receive a designated portion of NFT tokens after the ROBe2 Protocol was completed.

17. Neither Elmessiry nor his Company were hired as employees of the Partnership or any individual Plaintiff.

18. The Plaintiffs paid their contributions to the Partnership, but Elmessiry never made his financial contribution. The Plaintiffs' and Elmessiry's contributions were to be made in tranches. Elmessiry acknowledged during a Partnership phone call on or about August 24, 2021 that the Plaintiffs and himself needed "to make sure that we finalize our contributions" and discussed how the contributions would be split.

19. On other Partnership phone calls during the first phase of the ROBe2 development period, Elmessiry, when calling for each tranch from the other partners, between approximately August of 2021 to October of 2021, indicated when the parties needed to initiate payment. Based on the parties oral agreement, this lead the Plaintiffs to believe that Elmessiry had also been timely paying his share of the tranches into the Company's bank account. However, these representations were false. Elmessiry had not made any portion of his $750,000 contribution to the Partnership for the ROBe2 Protocol.

20. In a document signed November 8, 2021, the Universal Peace and Sustainability, LLC ("UPS"), an entity affiliated with the United Nations, entered into a Memorandum of Understanding with Global Renewable Energy Network, LTD ("GREN"), an entity affiliated with the Partnership, to confirm an investment by UPS of $25 million, through a "Partner NFT," into the ROBe2 Protocol's research and development.

21. Under this Memorandum of Understanding, GREN was required to provide material on the ROBe2 Protocol and work with UPS to utilize the ROBe2 Protocol to promote the use of renewable energy.

22. The first phase of the development period for the ROBe2 Protocol began on July 1, 2021 and was set to end November 30, 2021.

23. During this development period, there were hundreds of Partnership calls during which Elmessiry represented, in various detail, that he was actively working toward completing the ROBe2 Protocol, including creating the protocols, keys, website, and other assets of the ROBe2 Protocol such as those discussed in the attached Exhibit A[1] and using the Funds for these purposes. Elmessiry did ultimately deploy some NFTs to the Partnership, including himself, on January 1,

---

[1] Attorney-client privileged communications contained in this Exhibit have been redacted.

4865-2688-1084.4

Page 5 of 16
Case 3:22-cv-00555   Document 43   Filed 10/26/22   Page 5 of 16 PageID #: 174

2022 to make it appear that he had made bona fide progress toward completing the Protocol. This alleged progress was, however, a sham intended to deceive the Partnership that Elmessiry was performing as required, while he was in fact using the Partnership funds for his personal benefit. The deployed NFTs, without the corresponding protocol, are worthless.

24. Per the parties' agreement, NFTs were also only supposed to go to those who made financial contributions. By deploying NFTs to himself, Elmessiry created the appearance that he had made his financial contributions, which was, in reality, not the case.

25. During the first phase of the development period, Elmessiry also began asking for additional money and/or compensation from the Plaintiffs, yet there was no tangible progress being provided to the Plaintiffs and the parties had previously agreed not to receive compensation. Further, the sums requested by Elmessiry seemed outlandish for the kind of work that needed to be done.

26. The Plaintiffs continuously requested invoices for the developers Elmessiry was using, plus a report showing proof of the tangible progress made by Elmessiry, but Elmessiry failed to provide either of them to the Plaintiffs.

27. Meanwhile, because the Plaintiffs believed Elmessiry was meeting his obligations with the ROBe2 Protocol, both financially and executing on the development, the Plaintiffs were also assisting Elmessiry in a separate effort to make the Company a public company. This required audited financial statements of the Company. Around September of 2021, Elmessiry reached out to the Plaintiffs for assistance in completing this audit, which included hiring a CPA to bring the financial records up to date. During this process, Elmessiry provided all the bank statements of the Company to Plaintiffs.

28. During November of 2021, the Plaintiffs discovered that Elmessiry and/or the Company had, without authorization, wired the Funds from the Company's account to unknown individuals as well as Elmessiry's personal bank account for unauthorized purposes.

29. Elmessiry has refused to provide supporting documentation showing how all of the Funds were used.

30. However, upon information and belief, nearly all of the Funds were used for Elmessiry's personal benefit, including renovating Elmessiry's property in Egypt. This was not proper because, among other reasons, Elmessiry was not entitled to compensation for his work on the ROBe2 Protocol, and the Plaintiffs did not authorize these expenditures.

31. Elmessiry purportedly used approximately $20,000 of the Funds to create a website for the ROBe2 Protocol. However, this use of the Funds, plus all other use of the Funds by Elmessiry were done without prior authorization from the Plaintiffs.

32. Additionally, Elmessiry represented multiple times throughout the first development phase of the ROBe2 Protocol and again via email on January 16, 2022 that he planned to deliver specific work product for the ROBe2 Protocol, including token design, mining, and locks, smart contracts, and the website and related mobile and web applications, among other things. See attached **Exhibit A**.

33. Yet, to this day, Elmessiry has kept (along with the converted Funds) all of the ROBe2 Protocol and code, provisional patents, and marketing materials for himself and refused to give the operational keys and access codes for the ROBe2 Protocol and the affiliated website to any of the Plaintiffs.

34. Additionally, because of Elmessiry's actions, GREN was unable to move forward with the Memorandum of Understanding with UPS and create a partnership agreement by the designated deadline of December 1, 2021.

35. An Extended Memorandum of Understanding was entered into on or about December 1, 2021, which expanded the scope of the parties' business relationship by more clearly identifying each parties' roles, rights, and responsibilities. It outlined how the development of the ROBe2 Protocol would be used to support and expand renewable energy production throughout the world and identified the intent for it to be the cryptocurrency used by the United Nations. This relationship was material to the development of the ROBe2 Protocol.

36. In the Extended Memorandum of Understanding, the parties also agreed to extend the deadline for creating their partnership agreement to January 30, 2022, for the purpose of gathering and providing the materials required for due diligence.

37. From December 1, 2021 to January 30, 2022, the Plaintiffs requested all of the work performed/products created by Elmessiry, to date, on the ROBe2 Protocol so that they could complete the due diligence required under the Extended Memorandum of Understanding. However, Elmessiry never provided them with any tangible work performed on the ROBe2 Protocol. Additionally, on or around January 16, 2022, Elmessiry acknowledged in an email to the Partnership that certain milestones in the development plan remained undone, including hardware for the smart miner, PoR Token Mining, field deployment preparation, post lockup period follow up, and L1 full blockchain development planning. **See attached Exhibit A**.

38. Because of Elmessiry's actions, including his refusal to turn over Partnership property related to the ROBe2 Protocol, such as operational keys and access codes, the development of the ROBe2 Protocol has been stalled and, thus, the partnership agreement with UPS was not able to move forward.

39. This loss of a $25,000,000 USD funding opportunity has had a detrimental impact on the Partnership and the development of its ROBe2 Protocol.

# COUNT I
# BREACH OF ORAL CONTRACT
*(as to Elmessiry)*

40. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

41. The Plaintiffs and Elmessiry entered into an oral contract on or around July 1, 2021 to form a Partnership for the purpose of developing the ROBe2 Protocol.

42. The oral contract required Elmessiry to provide software development services for the ROBe2 Protocol and assist with other tasks, without compensation, as well as to contribute $750,000 to the Partnership.

43. The Plaintiffs wired the Funds to the Company for temporary holding on behalf of the Partnership and to be used, with authorization, for Partnership purposes.

44. Elmessiry, instead of using the Partnership Funds for Partnership purposes, used the Funds for improper and unapproved purposes.

45. Elmessiry transferred the Funds to unknown individuals and his own personal bank account for his personal benefit and without authorization. To the extent Elmessiry claims this was compensation for his work on the ROBe2 Protocol, this is not proper because the parties specifically agreed that they would not receive compensation other than in the form of NFTs after the ROBe2 Protocol was completed.

46. In addition, Elmessiry never provided his $750,000 contribution to the Partnership, as required by the parties' oral agreement.

47. Finally, Elmessiry refuses to provide the Plaintiffs with access to Partnership property, including but not limited to, any operational keys and access codes for the ROBe2 Protocol and the affiliated website.

48. Elmessiry breached the oral contract by: 1.) using the Funds for improper and unauthorized purposes that were not related to the development of the ROBe2 Protocol or any other approved Partnership purposes; 2.) failing to contribute his $750,000 share of the funding for the Partnership; 3.) failing to complete software development for the ROBe2 Protocol and other tasks assigned to Elmessiry; and 4.) by refusing to return Partnership property created for the Partnership pursuant to the oral contract, including any operational keys and access codes for the ROBe2 Protocol and affiliated website, among other things.

49. As a result of Elmessiry's breach, the Plaintiffs and the Partnership have suffered injuries in the amount of: 1.) Elmessiry's unpaid $750,000 contribution to the Partnership; 2.) the amount of the Funds that were used improperly and without authorization by Elmessiry; and 3.) the value of the products created by Elmessiry pursuant to the oral contract that he refuses to give to the Plaintiffs.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. That the Court award to the Plaintiffs direct damages against Elmessiry in the amount of $1,500,000 or such other amount as proven at trial; and

B. Such other and further relief as this Court determines is just and reasonable.

## COUNT II
## CONVERSION
*(as to Elmessiry and the Company)*

50. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

51. The Defendants were entrusted to use and hold the Funds in the Company's bank account, temporarily, for the benefit of the Partnership until a partnership entity was created.

52. Upon information and belief, Elmessiry is the sole director and shareholder of the Company.

4865-2688-1084.4

53. The Plaintiffs collectively wired the Funds, a determinative sum of $698,647, to the Company for the exclusive purpose of being used to develop the ROBe2 Protocol or for other approved Partnership purposes.

54. The Funds were the property of the Partnership formed between the Plaintiffs and Elmessiry.

55. The Funds were not to be used as compensation or for any other personal purposes of Elmessiry and/or the Company.

56. Elmessiry and/or the Company, without authorization, transferred or paid $698,647 of the Funds to unknown individuals' bank accounts and used it for improper and unapproved personal purposes in defiance of the Partnership and the Plaintiffs' rights.

57. The Defendants knew that they did not have proper authority and that their use of the Funds was in contravention of, and inconsistent with, the Partnership's rights of ownership.

58. Due to the Defendants' conversion, the Plaintiffs and the Partnership have been damaged.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. That the Court award to the Plaintiffs direct damages against the Defendants in the amount of $698,647 or such other amount as proven at trial; and

B. Such other and further relief as this Court determines is just and reasonable.

## COUNT III
## FRAUD
*(as to Elmessiry)*

59. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

60. Elmessiry falsely represented that he was working on the ROBe2 Protocol and using the Funds to further the development of the ROBe2 Protocol, including to support the

investment opportunity and milestones created by the Memorandum of Understanding between GREN, on behalf of the Partnership, and UPS.

61. Elmessiry falsely represented that he had been providing his $750,000 portion of the financial contributions toward the Partnership's efforts and the ROBe2 Protocol into the Company's bank account.

62. Elemeissry falsely represented that he would deliver the ROBe2 Protocol deliverables, including the operational keys and access codes for the ROBe2 Protocol and the affiliated website, to the Partnership.

63. Elmessiry knew that his representations were false at the time they were made and intended to deceive the Plaintiffs into entering into the oral contract for the Partnership and continuing to financially support the ROBe2 Protocol.

64. The Plaintiffs justifiably relied on the false representations from Elmessiry and, consequently, entered into and continued to operate the Partnership and its efforts on the ROBe2 Protocol.

65. As a direct and proximate result of Elmessiry's actions, the Plaintiffs and the Partnership have been damaged.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. Direct damages in the amount of $1,448,647;

B. Reasonable attorney's fees and costs based upon the intentional fraud described herein;

C. Punitive damages of $500,000 based upon Elmessiry's intentional acts of fraud and deception; and

D. Such other and further relief as this Court determines is just and reasonable.

# COUNT IV
# BREACH OF FIDUCIARY DUTY
*(as to Elmessiry)*

66. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

67. As a member of the Partnership, Elmessiry owed fiduciary duties to the Plaintiffs in all matters pertaining to the Partnership.

68. Elmessiry converted and/or improperly used the Partnership Funds without the consent of the Plaintiffs. He also failed to provide his agreed upon financial contribution to the Partnership.

69. Elmessiry also refuses to return Partnership property, including valuable information and access codes that are essential to continuing the work of the Partnership on the ROBe2 Protocol.

70. These actions benefited Elmessiry and are a breach of Elmessiry's fiduciary duties to the Plaintiffs.

71. Elmessiry's actions have given him an advantage, divorced from the Partnership, that has caused injury to the Plaintiffs and the Partnership.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. Direct damages in the amount of $1,500,000;

B. Reasonable attorney's fees and costs;

C. Pre-judgement interest; and

72. Such other and further relief as this Court determines is just and reasonable

# COUNT V
# PROMISSORY ESTOPPEL
### (as to Elmessiry)

73. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

74. Elmessiry promised to work on the ROBe2 Protocol and use the Funds to further the development of the ROBe2 Protocol, including to support the investment opportunity and milestones created by the Memorandum of Understanding between GREN, on behalf of the Partnership, and UPS.

75. Elmessiry also promised to provide his $750,000 portion of the financial contributions toward the Partnership's efforts and the ROBe2 Protocol.

76. These promises were unambiguous and not unenforceably vague.

77. The Plaintiffs reasonably relied on Elmessiry's promises and, as a result, wired the Funds into the Company's bank account and continued to invest their time, efforts, and funds into the ROBe2 Protocol and Partnership.

78. The Plaintiffs also reasonably relied on Elmessiry's promises to timely provide tangible work product in order to meet the due diligence requirements under the Extended Memorandum of Understanding.

79. As a direct and proximate result of Elmessiry's actions, the Plaintiffs and the Partnership have been damaged.

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. Direct damages in the amount of $1,448,647;

B. Reasonable attorney's fees and costs; and

C. Such other and further relief as this Court determines is just and reasonable.

**JURY TRIAL DEMANDED**

The Plaintiffs demands a trial by jury for all issues so triable.

Respectfully submitted,

s/Charles H. Williamson
Charles H. Williamson (TN BPR No. 018287)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 372019
Tel: (615) 244-6380
Fax: (615) 244-6804
Email: charley.williamson@wallerlaw.com

Christopher D. Davis (VSB No. 74809)
Destinee B. Byers (VSB No. 94691)
DAVIS LAW, PLC
555 Bellaire Ave., Ste. 340
Chesapeake, Virginia 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
Email: chris@davislawplc.com
destinee@davislawplc.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 26, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

    Thomas Anthony Swafford BPR #17578
    Tara L. Swafford BPR #17577
    Elizabeth G. Hart, BPR #30070
    THE SWAFFORD LAW FIRM, PLLC
    321 Billingsly Court, Suite 19
    Franklin, Tennessee 37067
    Tel:   (615) 599-8406
    Fax:  (615) 807-2355
    Email: tony@swaffordlawfirm.com
            tara@swaffordlawfirm.com
            betsy@swaffordlawfirm.com

                                        s/Charles H. Williamson
                                        Charles H. Williamson (TN BPR No. 018287)
                                        WALLER LANSDEN DORTCH & DAVIS, LLP
                                        511 Union Street, Suite 2700
                                        Nashville, TN 372019
                                        Tel:   (615) 244-6380
                                        Fax:  (615) 244-6804
                                        Email: charley.williamson@wallerlaw.com