UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LUMINOR CONSULTING CORP.; ) <br> DLC ELITE LENDING CORPORATION; ) <br> HEARD CONCRETE CONSTRUCTION ) <br> CORP.; THOMAS DAVIS; ) <br> KEVIN HARRISON, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> DR. ADEL ELMESSIRY and ) <br> WEBDBTECH, INC., ) <br>  ) <br> Defendants/Counterplaintiffs/ ) <br> Third-Party Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> LUMINOR CONSULTING CORP.; ) <br> HEARD CONCRETE CONSTRUCTION ) <br> CORP., TOM DAVIS, and ) <br> JEFFREY HOU YIN HO, ) <br>  ) <br> Counterdefendants, ) <br>  ) <br> And ) <br>  ) <br> EMTECH, ROB ABENANTE, and ) <br> ANISH PABARI, ) <br>  ) <br> Third-Party Defendants. ) | Civil Action No. 3:22-CV-00555 <br><br> Judges Richardson and Frensley <br><br> Jury Demanded |

**WEBDBTECH'S RESPONSE IN OPPOSITION
TO COUNTERDEFENDANT'S MOTION TO DISMISS AMENDED COUNTERCLAIM**

Defendant/Counterplaintiff WebDBTech, Inc. ("WebDBTech"), by and through counsel,

respectfully submits this response in opposition to the Motion to Dismiss Counts III and IV of the

1

Amended Counterclaim, filed by Counterdefendants Luminor Consulting Corporation, Thomas Davis, Jeff Hou Yin Hou, and Heard Concrete Construction Corporation, and Third-Party Defendants Anish Pabari and EMTech (collectively, "Counterdefendants"). WebDBTech's Amended Counterclaim contains sufficient facts to allow the Court to conclude that Counterdefendants are liable for unjust enrichment (Count III) and conversion (Count IV). Further, the claims against Davis and Heard are properly pled. Thus, the Motion to Dismiss should be denied.

## RELEVANT FACTS

WebDBTech partnered with certain of the Counterdefendants to develop software necessary to build renewable energy-based blockchain software protocol called Renewable Obligation Base Energy Economy (the "ROBe2 Protocol"). (Amended Counterclaim, Doc. 57, ¶¶ 14-16.) WebDBTech was hired by the partnership comprised of Adel ELMessiry, Thomas Davis, Rob Abenante, and Anish Pabari with the understanding that this work must be performed on an aggressive timeline, which precluded it from working on other projects. (*Id.* at ¶ 15-16.) WebDBTech has fully performed its work on the ROBe2 Protocol software and timely delivered Non-Fungible Tokens ("NFT") to protocol investors. (*Id.* at ¶ 25.) While WebDBTech has been paid $698,647 for a portion of this work, a significant balance is still outstanding. (*Id.* at ¶¶ 21-22.) In addition, WebDBTech continues to incur expenses for the maintenance of the ROBe2 Protocol software. (*Id.* at ¶ 23.)

WebDBTech had four contracts with Counterdefendants totaling $1,080,000 for a portion of the work it performed. (*Id.* at ¶ 18.) However, it has not been fully paid for those contracts. (*Id.* at ¶ 21.) Moreover, it has performed work outside of those four contracts and is owed an

additional $1,600,753 for the work it performed. (*Id.* at ¶ 22.) Thus, a portion of its claim is covered by contract, but a much larger portion is outside of the scope of the contracts.

One of those four contracts was with EMTech. The EMTech contract was paid by Heard for the benefit of Thomas Davis ("Davis"). (*Id.* at ¶ 21.) WebDBTech has since learned that EMTech is not a lawfully formed entity and was merely the alter ego of Heard and Davis. (*Id.* at ¶ 8.) Heard and Davis admitted that EMTech does not exist and was never even formed. (Answer to Amended Counterclaim, Doc. 60, ¶ 8.) Out of an abundance of caution, WebDBTech has sued Heard, Davis and EMTech for breach of the contract in the name of EMTech.

WebDBTech understands that Counterdefendants have secured additional investors for the ROBe2 Protocol software. (Amended Counterclaim at ¶ 41.) The funds, or availability of funds, from these investors, received in exchange for the NFTs produced and delivered by WebDBTech, has resulted in a benefit to Counterdefendants for which it must compensate WebDBTech. Its retention of this benefit without payment to WebDBTech is unjust. (*Id*. at ¶¶ 42-46.)

## LAW AND ARGUMENT

### I. Standard of Review

In considering a motion to dismiss, the Court must take all factual allegations as true, construe them in the light most favorable to the plaintiff, and determine if the complaint states a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007). For a claim to be "plausible", the plaintiff must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Coley v. Lucas Cnty. Ohio*, 799 F.3d 530, 537 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570 and *Ashcroft v. Iqbal*, 556 U.S. 665, 678 (2009)). A pleading does not need to be detailed but must include more than labels and conclusions. The pleading must contain "a short and plain statement

3

of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. Based on this this standard, the allegations in Counterplaintiff's pleadings sufficient.

## II. WebDBTech's Count III for Unjust Enrichment Has Been Properly Pled and Should Not Be Dismissed.

WebDBTech has properly pled its claim of Unjust Enrichment against all Counterdefendants, and the Counterdefendant's Motion to Dismiss Count III is due to be denied. To establish a claim of unjust enrichment, WebDBTech must prove that (1) it conferred a benefit on Counterdefendants; (2) the Counterdefendants appreciated the benefit; and (3) Counterdefendants' retention of the benefit without payment would be unjust. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citing *Paschall's, Inc. v. Dozier,* 407 S.W.2d, 150, 155 (Tenn. 1966)). WebDBTech contends in the Amended Counterclaim that it conferred a benefit on Counterdefendants by producing and delivering NFTs directly to investors of the Counterdefendants, all for the benefit of Counterdefendants. (Amended Counterclaim at ¶¶ 25, 41-47.) Counterdefendants make three faulty arguments in support or their motion to dismiss the unjust enrichment claim.

First, Counterdefendants claim that Count III is due to be dismissed because WebDBTech's remedy lies in contract and that unjust enrichment not been pled in the alternative. This argument is a fundamental misunderstanding of the Amended Counterclaim as WebDBTech has claims for both breach of contract and unjust enrichment. WebDBTech has claims for the unpaid amounts owed under the contracts plus for a much larger amount owed to it for work not covered by a

4

written contract for which it has conferred a benefit on the Defendants without payment. Thus, unjust enrichment is not an alternative claim and should not be pled in that manner.[1]

Second, Counterdefendants contend no benefit was received and/or gained. This argument fails, as even an indirect benefit can support a claim of unjust enrichment. *See Freeman Indus.*, 172 S.W.3d at 525 (finding that a "benefit" for the purpose of unjust enrichment is "any form of advantage that has a measurable value including the advantage of being saved from an expense or loss[,]" and that the benefit does not have to be conferred directly from the plaintiff to the defendants.) WebDBTech's allegations demonstrate, however, that it conferred a *direct* benefit on Counterdefendants by delivering NFTs to investors, who have paid Counterdefendants – not WebDBTech – for those NFTs. Additionally, Counterdefendants have secured additional investors from which they have or will benefit financially *solely* because of the work done by WebDBTech, for which it has not been paid. In other words, but for WebDBTech's work, Counterdefendants would not have these investors. The facts alleged in the Amended Counterclaim are no different than making a widget for a company and not getting paid for the widget, even though the company is paid by its customers who bought the widget.

At a minimum, the benefit conferred upon Counterdefendants by WebDBTech is an indirect benefit, which the *Freeman* Court held is sufficient to succeed on a claim of unjust enrichment. Indeed, the link between WebDBTech and Counterdefendants is closer than the connection allowed by the Court in *Freeman*. While the defendant in *Freeman* never directly

---

[1] Should this Court find that the unjust enrichment claim has not been sufficiently pled, the Counterdefendants' requested remedy is excessive and not in line with what the court has done in the past. In *Kalos, LLC v. White House Vill, LLC,* No. 3:20-cv-00812, 2020 U.S. Dist. LEXIS 223018 (M.D. Tenn. Nov. 30, 2020), this Court ultimately found that unjust enrichment had not been properly pled, but the remedy was dismissal without prejudice. Should this Court find that the unjust enrichment claim has not been pled properly, WebDBTech requests leave to amend its Amended Counterclaim to include the proper language.

transacted with the plaintiffs, WebDBTech was engaged directly by Counterdefendants to develop and produce the very benefit at issue – the NFTs. (Amended Counterclaim, ¶¶ 14-18); *Freeman*, 172 S.W.3d at 517-18, 525. Further, even if no money has changed hands or investors are merely "ready and waiting," Counterdefendants have received an advantage with measurable value in the form of the work performed and NFTs delivered by WebDBTech. This is a benefit for purposes of unjust enrichment.

Third, Counterdefendants claim that WebDBTech has not sufficiently alleged that the retention of the benefit would be inequitable. This argument also fails because WebDBTech timely delivered the NFTs to the correct parties. Counterdefendants have received the full value of this benefit, and WebDBTech has not been fully compensated. Counterdefendants' retention of this benefit without payment is necessarily unjust. Moreover, WebDBTech pled that it would be unjust for Counterdefendants to retain these benefits without paying WebDBTech for its services. (Amended Counterclaim, ¶ 47.)

Ultimately, Counterdefendants are attempting to hold the Amended Counterclaim to a stricter pleading standard than required. The Supreme Court in *Bell v. Twombly* stated, "the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007). For the reasons stated, the facts contained in the Amended Counterclaim are sufficient to state a claim for unjust enrichment, and the Motion to Dismiss should be denied.

### III. WebDBTech's Claim for Conversion Has Been Properly Pled.

WebDBTech has properly pled its claim for conversion. Counterdefendants have correctly cited the elements for conversion: "(1) the appropriation of another's property to one's own use

6

and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012). However, they have failed to acknowledge that WebDBTech has pled facts sufficient to meet those elements.

WebDBTech has claimed that it, in good faith, delivered NFTs to Counterdefendants with the expectation that the Counterdefendants would compensate WebDBTech for its work, as agreed, in creating the NFTS. (Amended Counterclaim, Doc. 57 ¶ 51.) To date WebDBTech has not been fully compensated by Counterdefendants for the work to create the NFTs. (*Id*. at ¶ 52.) The NFTs were provided to the Counterdefendants and subsequently sold to investors in exchange for capital. (*Id*. at ¶ 53.) Again, the Counterdefendants are attempting to hold WebDBTech to an unfair pleading standard. The Supreme Court in *Bell v. Twombly* stated, "the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007). These allegations are sufficient to meet the elements for conversion and, for that reason alone, the Motion to Dismiss Count IV should be denied. Nevertheless, Counterdefendants have made additional arguments which are addressed below.

First, Counterdefendants are claiming that tangible property has not been appropriated. Counterdefendants are correct that no claim for conversion exists where the asset at issue is intangible. However, Counterdefendants' contention that NFTs are intangible is incorrect and unsupported. Little case law exists exploring this issue, as NFTs are rather novel. Yet, an application of current statutory and common law demonstrates that NFTs qualify and should be treated as tangible assets, which are subject to a claim of conversion.

7

NFTs are created to be bought and sold on blockchain. An NFT is a way to mark something as original and is also a manner of authenticating ownership. *See Hermes Int'l v. Rothschild*, 2022 WL 1564597, *4 (S.D.N.Y. May 18, 2022). NFTs are non-fungible, which means that every NFT is unique. Therefore, when one person owns an NFT, no one else can own that item. *See* Robert W. Dorsey, et al., *Taxation of NFTs*, 49 EST. PLAN. 10, 10-11 (July 2022).

While the issue of whether an NFT is a tangible asset that can be converted has not yet been addressed in Tennessee, NFTs can be analogized to current law in two ways. First, the Tennessee Tax Code defines tangible property as "personal property that can be seen, weighed, measured, felt, or touched, or that is *in any other manner perceptible to the senses*." Tenn. Code Ann. § 67-6-102 (emphasis added). This "includes electricity, water, gas, steam, and prewritten computer software." *Id.* Prewritten computer software includes information that is loaded onto a computer, regardless of whether that information is housed on a physical device that can be held, like a disc. *See University Computing Co. v. Olsen*, 677 S.W.2d 445, 447 (Tenn. 1984). Thus, the fact that an NFT cannot be physically held does not preclude it from being classified as tangible property.

It appears that the Internal Revenue Service (the "IRS") agrees. In a recent Notice and in draft instructions for filing the 2022 Form 1040, the IRS has indicated that it will classify NFTs and cryptocurrencies as capital assets. *See* Notice 2014-21, 2014-16 I.R.B. 938; Draft Form 1040 (and 1040 SR) Instructions for Tax Year 2022 (October 17, 2022), p. 16, https://www.irs.gov/pub/irs-dft/i1040gi--dft.pdf. The instruction is a draft and is not yet binding. Nonetheless, both of these documents are instructive as to how the IRS views NFTs. Neither NFTs nor its category, digital assets, appear on the 2021 Form 1040 instructions, which further illustrates

the novelty of this issue. *See* Form 1040 (and 1040 SR) Instructions for Tax Year 2021, https://www.irs.gov/pub/irs-pdf/i1040gi.pdf.

Second, Tennessee courts have allowed actions for conversion where the property at issue does not meet the ordinary definition of tangible, such as stocks.[2] *See Hedges v. Burke*, 247 S.W. 91, 94 (Tenn. 1923); *Franklin Capital Associates, L.P. v. Almost Family, Inc.*, 194 S.W.3d 392, 406 (Tenn. Ct. App. 2005) (*rev'd on other grounds* by *Keller v. Estate of McRedmond*, 495 S.W.3d 852 (Tenn. 2016)). Stocks are not tangible in the traditional sense in that they cannot be held and touched (much like computer software and NFTs), but they are unique assets which can be owned only by a single person at a time. Likewise, the NFTs at issue are unique and can have only one owner at a time. Thus, as the Tennessee Supreme Court has allowed claims for conversion of stocks, claims for conversion of NFTs also should be allowed.

Counterdefendants argue that NFTs should be classified as intellectual property and, thus, intangible assets. However, they cite no legal authority that supports this position. While NFTs make use of and are related to intellectual property, they are not married to the underlying intellectual property of the file they encode; an NFT can only be owned and possessed by one person at a time, like physical personal property. *See* Dorsey, *supra* at 10-11. The investors who currently own and possess the NFTs created by WebDBTech do not have licensed copies, as they would if an NFT were intellectual property. Instead, they own the NFTs as unique assets outright. This necessarily means that WebDBTech is excluded from ownership of the same NFTs, which is further evidence that they are tangible assets that are subject to a claim of conversion, and Counterdefendants' Motion to Dismiss should be denied.

---

[2] Notably, the IRS classifies stocks as capital assets, which is the same treatment NFTs are expected to receive. *See* I.R.C. § 1221(a) (West); Treas. Reg. § 1.165-5(j)Example 1(ii)

Finally, Counterdefendants have attempted to argue that WebDBTech's Amended Counterclaim should be dismissed because the NFT's were no longer owned by WebDBTech and, as such, they could not be converted. This is a substantive argument that would be more appropriately addressed in a Motion for Summary Judgement. As stated above, the Counterdefendants are attempting to hold WebDBTech to a heightened pleading standard. At this point in the litigation, discovery has not been conducted and it would be inappropriate for the Court to make a ruling based on substantive arguments. The issue for the instant motion is whether facts have been pled that are sufficient to meet the elements of conversion. Again, the Supreme Court has stated, "the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007). As stated at the beginning of the argument, WebDBTech believes that it has sufficiently pled facts to support a claim for conversion. Therefore, Counterdefendant's Motion to Dismiss WebDBTech's conversion claim should be denied.

Moreover, because of the novelty of this issue, dismissing this claim at the pleadings stage is not appropriate. This issue is increasing in relevancy – as evidenced by the 2022 draft 1040 instructions – with little available guidance from the Courts or legislatures as to how NFTs should be treated. WebDBTech has pled sufficient facts in the Amended Counterclaim to state a plausible claim for conversion of the NFTs, and it should be allowed to proceed on the claim so that the parties have the opportunity to develop and present proof on this novel, yet important, issue.

## IV. Counterdefendants Davis and Heard Should Not Be Dismissed.

Counterdefendants' request that Davis and Heard be dismissed from this action is not supported factually or legally. Counterdefendant Davis was one of the four partners who

contracted with WebDBTech to develop the ROBe2 protocol, but Davis failed to pay WebDBTech pursuant to the terms of the partnership, as well as the contract he, along with Heard, helped negotiate. Davis is included in WebDBTech's Amended Counterclaim for his direct liability on all counts and Heard is also included due to the allegation made by the Plaintiffs that Heard was also a partner (even though Counterdefendants allege the partnership was comprised solely of Elmessiry, Davis, Pabari and Abenante).

EMTech is included only in the breach of contract claim as that was the name negotiated by Davis and Heard for the contract. However, Counterdefendants Davis and Heard admit that EMTech is an entity that does not exist and was never even formed. As such, WebDBTech has sued Davis, Heard and the entity they inserted in the contract with WebDBTech: EMTech. Because even Davis and Heard admit that EMTech does not exist, WebDBTech has averred that EMTech is the alter ego of Davis and Heard. This is not an attempt to pierce the corporate veil, however, as there is no corporation to serve as a veil for Davis and Heard. WebDBTech has made no substantive allegation of misuse of a corporate form to sanction a fraud. Rather, since the entity named by Davis and Heard does not exist, the parties then liable for the contract should be Davis and Heard.

Accordingly, Counterdefendants have incorrectly cited Fed. R. Civ. P. 9(b) which relates to fraud and mistake claims. No fraud claim has been made in this case related to Counterdefendants Davis and Heard; therefore, this rule does not apply. It is WebDBTech's contention that they had been dealing with Counterdefendants Davis and Heard when negotiating the contract for the creation of the ROBe2 protocol and that Counterdefendants Davis and Heard have failed to perform pursuant to that agreement. For these reasons, Counterdefendants Davis

and Heard should not be dismissed from the breach of contract claim or from any other claim in this action.

## CONCLUSION

For the foregoing reasons, WebDBTech respectfully requests that Counterdefendants' Motion to Dismiss be denied. In the alternative, WebDBTech requests leave to amend its Amended Counterclaim, should the Court find the allegations deficient.

Respectfully submitted,

/s/ Tara L. Swafford
THE SWAFFORD LAW FIRM, PLLC
Thomas Anthony Swafford BPR #17578
Tara L. Swafford BPR #17577
Elizabeth G. Hart, BPR #30070
321 Billingsly Court, Suite 19
Franklin, Tennessee 37067
Telephone: (615) 599-8406
Facsimile: (615) 807-2355
tony@swaffordlawfirm.com
tara@swaffordlawfirm.com
betsy@swaffordlawfirm.com

*Counsel for Defendants/Counterplaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and exact copy of the foregoing document has been served via email, U.S. Mail, or the Court's Electronic Filing System on:

Charles H. Williamson
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 372019
charley.williamson@wallerlaw.com

Christopher D. Davis
Destinee B. Byers
DAVIS LAW, PLC
555 Bellaire Ave., Ste. 340
Chesapeake, Virginia 23320
chris@davislawplc.com
destinee@davislawplc.com

this 5th day of January 2023.

                                                                /s/      Tara L. Swafford
                                                                          Tara L. Swafford