IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LUMINOR CONSULTING CORP. et al, | ) |
| Plaintiff/Counter-Defendant, | ) NO. 3:22-cv-00555 |
| v. | ) JUDGE RICHARDSON |
| ADEL ELMESSIRY et al., | ) |
| Defendants/Counter-Plaintiffs. | ) |

## MEMORANDUM OPINION AND ORDER

On January 11, 2023, Counter-Plaintiff Adel Elmessiry ("Counter-Plaintiff") filed an amended counterclaim against Counter-Defendants Thomas Davis and Anish Pabari (collectively, "Counter-Defendants").[1] (Doc. No. 70). The amended counterclaim also functions as a third-party complaint against third-party Defendant Rob Abenante ("third-party Defendant"). (*Id.*).

Counter-Defendants filed a joint motion to dismiss the amended counterclaim. (Doc. No. 74). The motion is accompanied by a supporting memorandum. (Doc. No. 75). Counter-Plaintiff filed a response (Doc. No. 79), and Counter-Defendants filed a reply (Doc. No. 80).

Third-party Defendant has also filed a motion to dismiss the third-party complaint against him, which consists of the same counts as the amended counterclaim against Counter-Defendants. (Doc. No. 93). Counter-Plaintiff filed a response (Doc. No. 97), and third-party Defendant filed a reply (Doc. No. 99).

---

[1] Although the amended counterclaim lists Pabari as a third-party Defendant, he is in fact a counterclaim Defendant. Indeed, Pabari is identified as a Plaintiff in the amended complaint at Doc. No. 43.

For the reasons stated herein, Counter-Defendants' motion to dismiss will be granted, and for the same reasons, third-party Defendant's motion to dismiss will be granted.

BACKGROUND[2]

Counter-Plaintiff entered into an oral partnership (the "Partnership") with Counter-Defendants and third-party Defendant to develop the software protocol necessary for the development of an innovative, renewable-energy based Blockchain software protocol called Renewable Obligation Base Energy Company (the "ROBe2 Protocol"). (Doc. No. 70 at 3). WebDBTech, which is partially owned by Counter-Plaintiff, had four written contracts for the performance of portions of the ROBe2 Protocol: 1) Agreement with EMTech for the sum of $400,000, attached to the amended counterclaim as Exhibit A; 2) Agreement with Anish Pabari for the sum of $200,000, attached to the amended counterclaim as Exhibit B; 3) Agreement with Jeffrey Hou Yin Ho for the sum of $200,000, attached to the amended counterclaim as Exhibit C; and 4) Agreement with Luminor Consulting Corp. for the sum of $280,000, attached to the amended counterclaim as Exhibit D. (*Id.* at 4) (collectively, the "Agreements").

Counter-Plaintiff and WebDBTech[3] have delivered the NFTs ("Non-Fungible Tokens") to investors and the Partnership. (*Id.*). The only remaining deliverables to turn over are the software and the keys to the protocol. (*Id.*). WebDBTech has not been fully compensated for its performance under the Agreements. (*Id.*). WebDBTech also continues to incur expenses for the maintenance of the ROBe2 Protocol. (*Id.* at 5). Counter-Plaintiff has also incurred several thousands of dollars of

---

[2] The (alleged) facts contained in this section are taken from Counter-Plaintiff's amended counterclaim and are treated as true for the purposes of the instant Motion. (Doc. No. 70). The facts pertaining to the amended counterclaim and the third-party complaint are the same.

[3] The amended complaint suggests that Counter-Plaintiff delivered this work product through WebDBTech, as a partial owner of WebDBTech.

accounting bills required by the Partnership for its plan to turn WebDBTech into a public company. (*Id.*).

Counter-Plaintiff's amended counterclaim (filed on January 11, 2023) contains three counts against Counter-Defendants and third-party Defendant: Count I ("Breach of Fiduciary Duty AND/OR Breach of Obligation of Good Faith and Fair Dealing"); Count II (also "Breach of Fiduciary Duty AND/OR Breach of Obligation of Good Faith and Fair Dealing"); Count III ("Unjust Enrichment"). Counter-Defendants and third-party Defendant have moved to dismiss the amended counterclaim/third-party complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. Nos. 74, 93). The motions are now ripe for the Court's review.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).

Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

DISCUSSION

1. **Counter-Defendants' Motion to Dismiss**

    A. <u>The amended counterclaim fails to state claims of a breach of a fiduciary duty</u>

Counter-Defendants argue that the amended counterclaim fails to state a claim of a breach of a fiduciary duty because the conduct alleged in Counts I and II cannot be fairly construed as a breach of the fiduciary duty of loyalty or care.

Although the amended counterclaim specifies *how* Counter-Defendants allegedly breached a fiduciary duty, it does not specify *which* fiduciary duty or duties Counter-Defendants allegedly breached.[4] The Court queries whether this failure to identify the duty breached renders the claim defective under Rule 8 (and *Iqbal* and *Twombly*) on the grounds that it does not adequately identify the grounds for relief. *See* Fed. R. Civ. P. 8(a); *Kensu v. Corizon*, 5 F.4th 646, 651 (6th Cir. 2021) ("The district court and defendants should not have to fish a gold coin from a bucket of mud to identify the allegations really at issue.") (internal quotation marks omitted). In any event, Counter-Plaintiff had few valid options to choose from. Tennessee law states that the "only fiduciary duties a partner owes to the partnership and other partners are the duty of loyalty and care. . . ." Tenn. Code Ann. § 61-1-404(a). Tennessee law recognizes the existence of a fiduciary duty between members of a partnership under established principles of partnership law. *See Walsh v. BA, Inc.*, 37 S.W. 3d 911, 917 (Ct. App. Tenn. 2000) (discussing breach of fiduciary duty by a partner in

---

[4] The closest the amended counterclaim comes to making this specification in Count I is where it alleges, "Pabari, Davis and Abenante have breached their fiduciary duties owed to Dr. ELMessiry, as a partner, by preventing the ROBe2 Protocol from being fully implemented causing financial injury to Dr. ELMessiry and the partnership." (Doc. No. 70 at ¶ 31). And the closest the amended counterclaim comes to making this specification in Count II is where it alleges, "[Counter-Plaintiff's] partners did not share the benefit of these investments with the partnership or Dr. ELMessiry. These actions benefited Pabari, Davis and Abenante and are a breach of their fiduciary duty to Dr. ELMessiry and the partnership," (*Id.* at ¶ 40). But these are, at most, a description of *how* some (unidentified) fiduciary duty was breached, not a description of *what* fiduciary duty was breached.

relation to the partnership). Tennessee has defined with specificity what constitutes a breach of the fiduciary duties of loyalty and care. Tennessee law describes the duty of loyalty as follows:

> b. A partner's duty of loyalty to the partnership and the other partners is limited to the following:
>
> 1. To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
>
> 2. To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and
>
> 3. To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

Tenn. Code Ann. § 61-1-404(b)(1)–(3). As for a partner's duty of care to the partnership (and other partners), this duty "is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." *See id.* § 61-1-404(c).

As noted, the amended counterclaim contains two counts of breach of a fiduciary duty. As to the first count, Counter-Plaintiff alleges that Counter-Defendants breached their fiduciary duty when they "intentionally failed to pay WebDBTech," which in turn caused the ROBe2 Protocol not to be implemented as planned. (Doc. No. 70 at 6).[5] This allegation (that the non-payment amounted to a breach of fiduciary duty), however, amounts to nothing more than a "conclusory statement[]" offered in support of "[t]hreadbare recitals of the elements of a cause of action," and therefore is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678. True, the amended counterclaim explains that the partnership had an agreement with WebDBTech and that payment

---

[5] Although the third-party complaint does not explain which duty this alleged conduct breaches, the Court assumes that Counter-Plaintiff believes that this conduct breaches the duty of care. Indeed, this allegation, plainly does not fall within the three types of conduct that constitute a breach of the duty of loyalty under Tennessee law.

was due, but there are simply no facts in the amended counterclaim to support the allegation that the failure to pay was intentional in a manner that rises to a breach of a fiduciary duty. For example, it is at least feasible that the Partnership's alleged decision not to pay WebDBTech could be beneficial to the Partnership if the Partnership had a justification for this decision, which in turn would mean that in all likelihood, no fiduciary duty had been breached. Indeed, sometimes it is prudent to (intentionally) breach a contract with another party, be it via non-payment of the third party or otherwise; the law recognizes this reality in the doctrine known as "efficient breach." As a district court in this circuit has helpfully explained:

> Courts avoid attributing breach to a moral failure of the breaching party, and have instead developed morally neutral explanations, such as "efficient breach," to explain and even encourage breach when its economic benefits outweigh the costs. *E.g., Stop-N-Go of Madison, Inc. v. Uno-Ven Co.*, 184 F.3d 672, 680 (7th Cir. 1999) ("Because, at least in theory, [efficient] breach makes society better off, the law does not treat it as disfavored"); *see also Patton v. Mid-Continent Sys., Inc.*, 841 F.2d 742, 750 (7th Cir. 1988) (describing liability under contract as "strict liability," because "if the promisor fails to perform as agreed, he has broken his contract even though the failure may have been beyond his power to prevent and therefore in no way blameworthy"). Accusations of moral failure are much more at home in the realm of torts, where many causes of action exist to remedy a party injured by another's willful conduct.

*Avis Rent A Car Sys., LLC v. City of Dayton*, No. 3:12-CV-399, 2015 WL 5636897, at *10 (S.D. Ohio Sept. 25, 2015). *See also Tri Cnty. Wholesale Distributors, Inc. v. Labatt USA Operating Co., LLC*, 828 F.3d 421, 429 (6th Cir. 2016) ("At common law, businesses have the freedom to enter into a contract that allows for termination, and contracting parties also have an inherent right to breach a contract that is no longer advantageous, committing what economists call an efficient breach.")

The amended counterclaim does nothing to flesh out why the alleged intentional non-payment of WebDBTech was anything more than a mere morally neutral decision to breach a contract (perhaps even a prudent one), rather than something tortious in nature. Although the Court

treats facts in the amended counterclaim as true, the Court cannot fabricate facts that are not in the amended counterclaim to support Counter-Plaintiff's allegation. For these reasons, the Court finds that Count I does not state a claim for a breach of any fiduciary duty.

As for Count II, the amended counterclaim alleges that Counter-Defendants failed to share the benefits of the investments in the ROBe2 Protocol with the Partnership or Counter-Plaintiff and therefore have "breached their fiduciary duty" and their "obligations of good faith and fair dealing" to Counter-Plaintiff and the Partnership. (Doc. No. 70 at 6–7). Once again, the amended counterclaim does not specify *which* fiduciary duty Counter-Defendants have allegedly breached. The amended counterclaim also does not allege that the Partnership was entitled to any specific benefit arising from investments in the ROBe2 Protocol. Therefore, the amended counterclaim does not create a plausible inference that Counter-Defendants breached a fiduciary duty (or for that matter, any purported obligations of good faith by failing) to provide benefits from investments to the Partnership. To the extent that Counter-Plaintiff alleges Counter-Defendants breached a fiduciary duty and their obligations of good faith because Counter-Defendants failed to provide a benefit to *Counter-Plaintiff* (rather than the Partnership), the amended counterclaim is also woefully devoid of supporting factual matter. The amended counterclaim does not describe what this "benefit" is, nor does it explain why Counter-Plaintiff was "entitled" to the "benefit." (*Id.* at 7). Like Count I, Count II does not "plead[] factual content that allows the court to draw the reasonable inference that [] [Counter-Defendants] [] [are] liable for" a breach of a fiduciary duty. *See Iqbal*, 556 U.S. at 678.

    B. <u>The amended counterclaim fails to state a claim for the breach of the duty of good faith and fair dealing</u>

Counter-Defendants argue that the amended counterclaim fails to state a claim based on the breach of good faith and fair dealing. (Doc. No. 75 at 5). As Counter-Defendants point out,

Counter-Plaintiff's claim based on the breach of the covenant (or, as Counter-Plaintiff calls it, the "obligation") of good faith and fair dealing is based solely on the allegation that Counter-Defendants intentionally breached a fiduciary duty. (Doc. Nos. 75 at 6, 70 at 6). Whether Counter-Plaintiff has stated a claim for the breach of good faith and fair dealing therefore necessarily hinges on whether the amended complaint contains facts supporting the allegation that Counter-Defendants breached a fiduciary duty. As discussed above, the Court finds that the amended counterclaim does not state a claim for the breach of a fiduciary duty. It follows that the amended counterclaim also does not state a claim for the breach of good faith and fair dealing.

Moreover, the breach of the covenant of good faith and fair dealing (hereinafter, "covenant") is not an independent cause of action. *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 899 (M.D. Tenn. 2022) ("Tennessee courts have also consistently found that a breach of the duty of good faith and fair dealing is not a cause of action in and of itself but [is] a part of a breach of contract cause of action.") (internal quotation marks omitted).[6] As explained in a footnote below, the covenant nevertheless under certain circumstances does have a role to play in a *breach-of contract* claim in particular. But Counter-Plaintiff does not bring any such claim.

---

[6] One might ask what relevance the covenant has to anything at all, if its breach is not grounds for an independent cause of action. The undersigned has written on this topic before. Under Tennessee law, the covenant of good faith and fair dealing implied exists as part of every contract. *See Evans*, 589 F. Supp. 3d at 899. As such, the covenant does have a role in a breach of contract claim; Tennessee courts have described the covenant as being "a part of" a breach-of-contract claim.
    The undersigned previously has "provide[d] his view about how breach of the covenant of good faith and fair dealing comprises 'a part' of a breach-of-contract claim[.]" *See id.* In his view, the idea is that "if the defendant is properly considered to have breached the covenant of good faith and fair dealing—meaning, in essence, engaging in bad faith and unfair actions that prevent the occurrence of circumstances whereby the plaintiff would get the benefit of his bargain—the defendant cannot raise the non-occurrence of such circumstances as a defense to the plaintiff's breach of contract claim." *Id.; see also id.* at 900 (explaining the basis for this view). The covenant does not, by virtue of thus being "part of" a breach-of-contract claim, somehow aid Plaintiffs in their breach-of-contract claim in this case.

So the covenant not only is not cognizable as a cause of action, it is of no relevance whatsoever in the present case.

For these alternative reasons, to the extent that Count I and Count II purports to assert independent claims based specifically on the breach of the covenant of good faith and fair dealing, these claims must be dismissed.

    C.  <u>The amended counterclaim fails to state a claim for unjust enrichment</u>

To state a claim for unjust enrichment, a party must allege (in a non-conclusory manner, of course, as noted above) that "(1) [he conferred] a benefit [] upon the defendant. . . ; (2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 905 (M.D. Tenn. 2018) (quoting *Cole v. Caruso*, No. W2017-00487-COA-R3-CV, 2018 WL 1391625, at *3 (Tenn. Ct. App. Mar. 20, 2018)). Counter-Defendants argue that Counter-Plaintiff has failed to state a claim for unjust enrichment because the amended counterclaim fails to allege facts demonstrating that Counter-Plaintiff conferred a benefit on Counter-Defendants. (Doc. No. 75 at 8). The Court agrees.

In support of his claim of unjust enrichment, Counter-Plaintiff alleges that "[] [Counter-Plaintiff] has dedicated his time and money to the furtherance of the Partnership and towards the development of the ROBe2 Protocol." (Doc. No. 70 at 7–8). As Counter-Defendants point out, the amended counterclaim does not describe what "time" or "money" Counter-Plaintiff provided to Counter-Defendants. And as for as the amended counterclaim suggests, this purportedly conferred benefit would have been conferred on the *Partnership*, not on *Counter-Defendants* individually. The amended counterclaim also does not explain the basis on which Counter-Plaintiff allegedly conferred the benefit. Instead, the amended counterclaim repeatedly emphasizes that it was

*WebDBTech* that had the obligation to provide work to Counter-Defendants on the ROBe2 Protocol. And the contracts attached to the amended counterclaim support the notion that the Partnership had entered into several agreements with WebDBTech—not Counter-Plaintiff—for work on the ROBe2 Protocol, which suggests that Counter-Plaintiff's dedication of time and money towards development of the ROBe2 Protocol would have benefited WebDBTech rather than Counter-Defendants.[7] (Doc. No. 70 at 16–31). Without any explanation of the alleged benefit conferred or the reason for why the benefit was conferred, the amended complaint fails to state a claim for unjust enrichment because the facts contained therein lack facial plausibility that Counter-Plaintiff conferred a benefit to Counter-Defendants. It necessarily follows that the (alleged) facts contained in the amended counterclaim fail to plausibly suggest that Counter-Defendants appreciated a benefit and that Counter-Defendants retention of such benefit would be inequitable.

**2. Third-Party Defendant's Motion to Dismiss**

As noted above, third-party Defendant has filed a motion to dismiss the third-party complaint under Rule 12(b)(6). (Doc. No. 93). The third-party complaint consists of the same

---

[7] The Court seeks to clarify a few important points with respect to this remark. First, the existence of contracts between WebDBTech and the Partnership for work on the ROBe2 Protocol does not necessarily exclude a claim of unjust enrichment by Counter-Plaintiff. Indeed, it is hypothetically possible that Counter-Plaintiff could have conferred a benefit on Counter-Defendants even while WebDBTech was fulfilling its obligations under the contracts. Second, the existence of these contracts does not preclude a claim of unjust enrichment on the grounds that generally such a claim is available only where no contractual remedies exist. Because Counter-Plaintiff was not a party to the contracts attached to the amended counterclaim, he (barring some contractual principles that neither party raises here, e.g., third-party beneficiary status) would not have a remedy for a purported breach of these contracts, so in this respect an unjust-enrichment claim is remains viable.

The relevance of these contracts in the Court's analysis is that they support the notion that it was WebDBTech, not Counter-Plaintiff, who was retained to provide work product for the ROBe2 Protocol, thus undermining Counter-Plaintiff's assertion (which is unsupported by factual matter in any event) that he conferred a benefit on Counter-Defendants (rather than WebDBTech) in doing work on the ROBe2 Protocol.

claims and factual allegations as those lodged against Counter-Defendants. (Doc. No. 70). The memorandum accompanying the motion to dismiss is essentially identical to Counter-Defendants' joint memorandum in support of their motion to dismiss.[8] Counter-Plaintiff's response (Doc. No. 97) to third-party Defendant's motion is also functionally identical to its response (Doc. No. 79) to Counter-Defendants' motion. The Court therefore incorporates by reference its analysis above as to why the amended counterclaim against Counter-Defendants should be dismissed. It therefore follows that the Court finds that the third-party complaint must be dismissed as pled against third-party Defendant.

## CONCLUSION

For the reasons stated herein, the motions at Doc. Nos. 74 and 93 are GRANTED. Accordingly, the amended counterclaim at Doc. No. 70 is DISMISSED.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[8] The two differences that the Court can detect between the memorandums is that third-party Defendant's memorandum makes more specific references to him.