IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| LUMINOR CONSULTING CORP. et al, | ) |
| Plaintiff/Counter-Defendant, | ) NO. 3:22-cv-00555 |
| v. | ) JUDGE RICHARDSON |
| ADEL ELMESSIRY et al., | ) |
| Defendants/Counter-Plaintiffs. | ) |

## MEMORANDUM OPINION AND ORDER

On December 1, 2022, Counter-Plaintiff WebDBTech ("Counter-Plaintiff") filed an amended counterclaim and third-party complaint. (Doc. No. 57). The amended counterclaim lists Counter-Defendants Luminor Consulting Corporation, Thomas Davis ("Davis"), Anish Parbari,[1] Jeff Hou Yin Ho, and Heard Concrete Construction Corporation ("Heard") (collectively, "Counter-Defendants"). (*Id.*). The amended counterclaim also functions as a third-party complaint against third-party Defendant Rob Abenante ("Abenante"), who was not an original party to this action. (*Id.*).[2]

On December 15, 2022, Counter-Defendants filed a joint motion to dismiss Counts III and IV of the amended counterclaim. (Doc. No. 58). The motion is accompanied by a supporting

---

[1] Although the amended counterclaim lists Pabari as a third-party Defendant, he is in fact a Counter-Defendant. Indeed, Pabari is identified as Plaintiff in the amended complaint at (Doc. No. 43).

[2] In response to the Court's order at Doc. No. 100, the parties to this action filed a notice clarifying that EmTech can be terminated as a party to this action because it never existed as an entity of any type. Therefore, although the amended counterclaim lists EmTech as a third-party Defendant, the Court does not construe the amended counterclaim as stating a claim against EmTech, which has now been terminated as a party.

memorandum. (Doc. No. 59). Counter-Plaintiff filed a response (Doc. No. 69), and Counter-Defendants filed a joint reply (Doc. No. 71).

On April 11, 2023, Abenante filed a motion to dismiss Counts III and IV of Counter-Plaintiff's amended counterclaim to the extent that it functions as a third-party complaint against him. (Doc. No. 90). The motion is accompanied by a supporting memorandum. (Doc. No. 91). Counter-Plaintiff filed a response (Doc. No. 96), and Abenante filed a reply (Doc. No. 98).

Abenante's motion to dismiss Counts III and IV of the third-party complaint and Counter-Defendants' motion to dismiss the same counts presented against them as counterclaims are functionally identical. For the reasons stated herein, the motions at Doc. No. 58 and Doc. No. 90 will be granted.

FACTUAL ALLEGATIONS[3]

This case stems from a business deal gone wrong. Counter-Plaintiff was "engaged" (presumably through the written contracts described below) with a partnership[4] comprised of Adel Elmessiry, Thomas Davis, Rob Abenante, and Anish Pabari to develop the software protocol

---

The Court notes additionally that the amended counterclaim and the third-party complaint are encompassed within the same document (Doc. No. 57). The counts are characterized as (i) counterclaims as applied to the Counter-Defendants, and (ii) a third-party complaint as applied to the third-party Defendant.

[3] The facts contained in this section are taken from Counter-Plaintiff's amended counterclaim and are treated as true for the purposes of the instant motion. (Doc. No. 57). The Court notes that although the facts contained in the amended counterclaim are quite sparse, those are the facts on which the instant motions must be decided; in resolving the instant motions, the Court cannot look to facts contained in other pleadings in the case.

[4] The amended counterclaim is not a model of clarity. Regrettably, it is unclear what role the "partnership" is playing in the amended counterclaim. Insofar as the amended counterclaim provides, it does not appear that any of the contracts mentioned in the amended counterclaim include the Partnership as a party.

necessary for the development of an innovative, renewable energy based Blockchain protocol[5] called Renewable Obligation Base Energy Economy (the "ROBe2 Protocol."). (Doc. No. 57 at 4). Counter-Plaintiff also had four written contracts for the performance of portions of the ROBe2 Protocol[6]: 1) Agreement with EmTech (an entity that never existed, as the parties now acknowledge) for the sum of $400,000, attached to the amended counterclaim as Exhibit A; 2) Agreement with Anish Pabari for the sum of $200,000, attached to the amended counterclaim as Exhibit B; 3) Agreement with Jeffrey Hou Yin Ho for the sum of $200,000, attached to the amended counterclaim as Exhibit C; and 4) Agreement with Luminor Consulting Corp. for the sum of $280,000, attached to the amended counterclaim as Exhibit D. (*Id.* at 4) (collectively, the "Agreements").

Counter-Plaintiff has yet to receive full payment under the contracts. (*Id.* at 5). Counter-Plaintiff also continues to incur expenses (currently in excess of $50,000 per month) from the maintenance of the ROBe2 Protocol.[7] (*Id.*). Counter-Plaintiff has delivered the Non-Fungible

---

[5] The amended counterclaim does not define "Blockchain protocol." Its meaning, however, is not material to the Court's analysis.

[6] The Court notes that the amended counterclaim's reference to "performance of portions of the ROBe2 Protocol" is ambiguous. On the one hand, it could be taken to mean performance of the actual ROBe2 Protocol—a performance that would be possible only if the ROBe2 Protocol was already in existence (i.e., had been developed). However, the Court believes that the better reading—which aligns with what the Court expects were Counter-Plaintiff's intentions—is that "performance of portions of the ROBe2 Protocol" in fact refers to the performance of the respective contracts for the development of the ROBe2 Protocol.

[7] The amended counterclaim's reference to "maintenance of the ROBe2 Protocol" suggest prior completion (full development) of the ROBe2 Protocol. However, the amended counterclaim does not directly state that this is true, and it does not provide sufficient facts for the Court to determine whether this is the case or what is meant by reference to such "maintenance." In any event, whether the amended counterclaim is alleging completion of the ROBe2 Protocol, and what is meant here by "maintenance," are not issues that affect the Court's analysis.

Tokens ("NFTs") as part of the ROBe2 Protocol but has not yet provided the software and keys[8] to the protocol. (*Id.*).

## PROCEDURAL BACKGROUND

As noted above, on December 1, 2022, Counter-Plaintiff filed an amended counterclaim, which also functions as a third-party complaint. The amended counterclaim and third-party complaint contains four counts: Count I (Breach of Contracts); Count II (Breach of Oral Contract); Count III (Unjust Enrichment); Count IV (Conversion). (*Id.* at 5–8). Counter-Defendants and Abenante have moved to dismiss Counts III and IV of the amended counterclaim and third-party complaint respectively for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 58, 90). Counter-Defendants also move to dismiss Defendant Thomas Davis ("Davis") and Defendant Heard Concrete Construction Corporation ("Heard"), as the alleged alter-egos of the non-existent EmTech, on the same grounds.

As discussed below, the motions at Doc. Nos. 58 and 90 will be granted.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-

---

[8] The amended counterclaim does not explain what "keys" to the protocol means. Its meaning, however, is not material to the Court's analysis.

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary

judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC,* 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

DISCUSSION

**1. Counter-Defendants' Motion to Dismiss**

Counter-Defendants jointly move to dismiss Counts III (unjust enrichment) and IV (conversion) of the amended counterclaim. (Doc. No. 58). Counter-Defendants also seek to dismiss Counter-Defendant Davis and Counter-Defendant Heard insofar as the amended counterclaim seeks to hold Davis and Heard liable as the alter-egos of (the non-existent) EmTech. As discussed immediately below, the Court agrees that the amended counterclaim fails state claims of unjust enrichment and conversion, and that Davis and Heard should be dismissed insofar as the claims against them seek to hold them liable as the alter-egos of EmTech.

A. <u>The amended counterclaim does not adequately plead a claim of unjust enrichment</u>

Counter-Defendants argue that Counter-Plaintiff has failed to state a claim for unjust enrichment because the amended counterclaim does not properly plead unjust enrichment[9] in the alternative to the breach-of-contract(s) claim. (Doc. No. 59 at 4). "Unjust enrichment is a quasi-contractual theory in which a court may impose a contractual obligation where one does not exist." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 905 (M.D. Tenn. 2018) (citing *Cole v. Caruso*, No. W2017-00487-COA-R3-CV, 2018 WL 1391625, at *3 (Tenn. Ct. App. Mar. 20, 2018)). In order to successfully plead a claim of unjust enrichment in the alternative to a claim of breach of contract, "the plaintiff must allege some basis for concluding that the defendant was unjustly enriched even

---

[9] The elements of an unjust enrichment claim, though not necessarily at issue here, are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Doe*, 334 F. Supp. 3d at 905 (quoting *Cole*, 2018 WL 1391625, at *3).

if no contract existed." *See Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 577 (M.D. Tenn. 2020). "Thus, a party seeking to recover [alternatively] under a theory of unjust enrichment [as an alternative to a breach-of-contract theory] 'must demonstrate [alternatively] . . . [that] there [is] no existing, enforceable contract between the parties covering the same subject matter.'" *See id.* (quoting *Smith v. Hi-Speed, Inc.*, 536 S.W. 3d 458, 480 (Tenn. Ct. App. 2016)).

In light of these principles, the Court agrees that Counter-Plaintiff has not adequately pled its unjust enrichment claim. The amended counterclaim identifies the existence of four contracts "for the performance of portions of the ROBe2 Protocol":

> 1) EMTech for the sum of $400,000, attached to the amended counterclaim as Exhibit A
> 2) Anish Pabari for the sum of $200,000, attached to the amended counterclaim as Exhibit B;
> 3) Jeffrey Hou Yin Ho for the sum of $200,000, attached hereto as Exhibit C; and
> 4) Luminor Consulting Corp. for the sum of $280,000, attached to the amended counterclaim as Exhibit D.

(Doc. No. 57 at 4). As to Counter-Plaintiff's claim for unjust enrichment, the amended counterclaim explains that Counter-Plaintiff in good faith has delivered the NFTs ("Non-Fungible Tokens") to Counter-Defendants with the expectation of being compensated but has yet to receive full compensation. (*Id.* at 7). According to the amended counterclaim, Counter-Defendants have been unjustly enriched by virtue of receiving funds from investors and by providing the NFTs delivered by Counter-Plaintiff to investors. (*Id.*). The amended counterclaim, however, does not explain the basis for the unjust enrichment claim. Indeed, the amended counterclaim does not include facts supporting a plausible inference that Counter-Defendants were unjustly enriched due to receiving a benefit beyond the performance they were due under the four allegedly enforceable contracts—which appear to govern the same subject matter covered by Counter-Plaintiff's unjust enrichment claim. Instead, the amended counterclaim states that the above-described contracts are for "performance of portions of the ROBe2Protocol." (*Id.* at 4). However, the amended

counterclaim does not assert or otherwise suggest —*even in the alternative*—that the grounds for unjust enrichment fall outside the scope of the contracts.

In its response, Counter-Plaintiff asserts that it has claims for unpaid amounts owed under the contracts in addition to a "much larger amount" for work that is not covered by the contracts. (Doc. No. 69 at 4–5). Tellingly, Counter-Plaintiff makes this assertion without a citation to the amended counterclaim. This is likely because the amended counterclaim is conspicuously devoid of any factual matter plausibly suggesting that Counter-Defendants were unjustly enriched even if no contracts had existed. Curiously, even Counter-Plaintiff's response does not explain the basis for its assertion that it conferred a benefit upon Counter-Defendants beyond that which was required under the existing contracts.

In a footnote, Counter-Plaintiff requests leave to amend its counterclaim yet again if the Court finds that it has failed to adequately plead a claim of unjust enrichment. The Court is disinclined to consider an argument raised only in a footnote. *See Taybron v. Liberty Mut. Pers. Ins. Co.*, 568 F. Supp. 3d 854, 860 (E.D. Mich. 2021) ("An argument set forth exclusively in a footnote is not properly presented for the court's review."). Even considering this request, however, Counter-Plaintiff's original counterclaim also contained a claim for unjust enrichment. (Doc. No. 25 at 11). Therefore, Counter-Plaintiff has already had two opportunities (the original counterclaim and the amended counterclaim) to properly plead this claim, and the Court does not find it appropriate to extend a third try. Therefore, Count III of the amended counterclaim is dismissed with respect to Counter-Defendants.

B. <u>The amended counterclaim does not adequately plead a claim of conversion</u>

"The elements of a conversion claim include: (1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged

to have been converted; and (3) defiance of the true owner's rights to the chattel." *Harris v. Ally Fin. Inc.*, 2-15-cv-02501, 2015 WL 7588263, at *4 (W.D. Tenn. Nov. 25, 2015) (internal quotations omitted). The first element necessarily requires the party pleading a conversion claim to have an ownership right in the allegedly converted chattel at the time of the alleged conversion. *See J&R Passmore, LLC v. Rice Drilling D, LLC*, 2-18-cv-01587, 2023 WL 2667749, at * 19 (S.D. Ohio Mar. 28, 2023) ("Further, it is fundamental that a plaintiff in a conversion action [ ] show title or rightful ownership of the chattel, including money, at the time of the alleged conversion.") (internal quotation marks omitted).

According to Counter-Defendants, the agreements between Counter-Plaintiff and themselves included the creation and delivery of NTFs. (Doc. No. 59 at 9). Consistent with this allegation, the amended counterclaim strongly suggests that the delivery of the NFTs was made pursuant to the Agreements: "WebDBTech . . . delivered NFTs to Counterdefendants and Third-Party Defendants. . . *as agreed*. . .." (Doc. No. 57 at 8). Counter-Defendants further argue that the Agreements (which are attached to the amended counterclaim) show that delivery of the NFTs triggered an assignment of rights from Counter-Plaintiff to Counter-Defendants. (Doc. No. 59 at 9). Therefore, according to Counter-Defendants, the amended counterclaim fails to state a claim for conversion because it does not indicate that Counter-Plaintiff retained any ownership rights in the NFTs at the time of the alleged conversion.

Counter-Plaintiff does not provide an argument in response. Instead, it attempts to punt the issue, arguing that the Court should wait until summary judgment to resolve the question of whether Counter-Plaintiff retained ownership in the NFTs after delivery. But the Court cannot do that; it needs to resolve Counter-Defendants' argument about the adequacy of the allegations here at issue; the Court cannot decline to weigh in on a challenge to the adequacy of *allegations* based

on the possibility that it *might* have a chance to weigh in on the adequacy of *the evidence to support* those allegations at the summary judgment stage. The Court must address the present challenge (which Counter-Defendants were well within their prerogative to make) and not ignore it based on the possibility that a *different* (evidence-based) kind of challenge will be made later.

Counter-Plaintiff's failure to respond to Counter-Defendant's argument constitutes a concession to the proposition that Counter-Plaintiff did not adequately allege that they retained ownership rights in the NFTs after delivery. *See AK v. Behav. Health Sys., Inc.*, 382 F. Supp. 3d 772, 775 (M.D. Tenn. 2019) ("Under this Court's Local Rules, when a party fails to respond to an argument, that argument is generally deemed to be unopposed and the proposition conceded. The same is true under the case law.") (citing L.R. 7.01(b); *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008)). And, consistent with the discussion above, the Court declines to construe Counter-Plaintiff's request to defer the issue to summary judgment as a response under this Court's Local Rules or the caselaw. Indeed, allowing parties to request a deferral of an issue in lieu of responding to the merits of an argument on that issue would render a nullity the rule that a party must respond to an argument to avoid concession—and when the request is to defer until the summary-judgment stage a ruling on an issue raised in a motion to dismiss would render a nullity the very device of a motion to dismiss.[10]

The Court also rejects Counter-Plaintiff's argument that Counter-Defendants attempt to hold it to a higher pleading standard than prescribed by *Iqbal*/*Twombly*. It is a fundamental requirement of a conversion claim that the claimant have ownership rights in the chattel that it

---

[10] The Court also does not agree that this issue must be deferred until summary judgment. Counter-Plaintiff's basis for this request is that the issue raises a "substantive argument." (Doc. No. 69 at 10). Counter-Plaintiff cites no case law or otherwise relevant authority in support of the proposition that "substantive arguments" cannot be addressed at the motion-to-dismiss stage. Counter-Plaintiff has therefore also failed to show that the issue of whether Counter-Plaintiff retained rights in the NFTs after delivery is inapt for resolution at this stage in the litigation.

alleges was converted. By arguing that the amended counterclaim fails to allege facts in support of this requirement, Counter-Defendants do nothing more than seek to hold Counter-Plaintiff responsible for a basic pleading requirement for its conversion claim.

In summary, Counter-Plaintiff has failed to respond to Counter-Defendants' argument the amended counterclaim does not indicate that Counter-Plaintiff retained rights in the NFTs once they were delivered, and thus Counter-Plaintiff concedes as to this proposition. Therefore, Counter-Plaintiff's conversion claim must be dismissed with respect to Counter-Defendants.

C. <u>Dismissal of Defendant Thomas Davis and Defendant Heard Concrete Construction Corporation as alter egos of EmTech</u>

The parties do not dispute that the amended counterclaim seeks to hold Defendant Davis and Heard liable both in their individual capacities *and* as alter-egos of EmTech. Counter-Defendants argue, however, that Defendant Davis and Defendant Heard should be dismissed because the amended counterclaim fails to allege facts supporting an alter-ego theory of liability. (Doc. No. 59 at 9). "Alter ego means 'other self'—where one person or entity acts like, or, for another to the extent that they may be considered identical." *U.S. v. N. States Invs., Inc.*, 670 F. Supp. 2d 778, 787 (N.D. Ill. 2009). *See id.* at 787. An alter-ego theory is an assertion that "two parties should be treated as the same party" for purposes of liability. *See Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 930 (6th Cir. 2020; *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302 (6th Cir. 2005) ("[A] contention that *A* is *B*'s 'alter ego' asserts that *A* and *B* are *the same entity*").

All parties to this litigation, however, have now agreed that EmTech does not and has not ever existed as an entity of any kind. (Doc. No. 101). The alter-ego theory necessarily requires the existence of an entity (the initial entity), usually a corporation or company, and a second entity or an individual that is the *alter* ego of the initial entity (and therefore is liable for the initial entity's

debts). It necessarily follows that where no initial entity exists, the alter-ego theory does not apply. Indeed, there would be nothing to be alter ego of—or, to put it somewhat differently, there would be no entity having a debt for which a purported alter ego could even be liable. Therefore, the alter ego theory is inapplicable in this context, where the parties agree that no initial entity exists (*i.e.* EmTech). Insofar as the amended counterclaim seeks to hold Davis and Heard liable as the alter egos of EmTech, such claims are dismissed. Counter-Plaintiff, however, is permitted to pursue its claims against Davis and Heard without reference to an alter ego theory. And in their reply, Counter-Defendants appear to agree that the amended counterclaim seeks to hold Davis and Heard liable in their individual capacities (*i.e.*, not as alter-egos of EmTech) for some if not all of the pled claims. (Doc. No. 71 at 6). Therefore, Davis and Heard are not dismissed insofar as the claims pled against them seek to hold them liable irrespective of their allegedly being alter egos of the (non-existent) EmTech.

2. **Third-Party Defendant Abenante's Motion to Dismiss**

As noted above, Abenante has filed a motion to dismiss Counts III and IV of the third-party complaint under Rule 12(b)(6). (Doc. No. 90). The memorandum accompanying the motion to dismiss is essentially identical to Counter-Defendants' joint memorandum in support of their motion to dismiss.[11] Counter-Plaintiff's response (Doc. No. 96) to Abenante's motion is also functionally identical to its response (Doc. No. 69) to Counter-Defendants' motion. The Court therefore incorporates by reference its analysis above as to why Counts III and IV should be

---

[11] The two differences that the Court can detect between the memorandums is that Abenante's memorandum makes more specific references to him, and the memorandum does not contain the section arguing for David and Heard's dismissal as alter-egos of EmTech.

dismissed as pled against Counter-Defendants. It therefore follows that the Court finds that Counts III and IV must be dismissed as pled against Abenante.

## CONCLUSION

For the reasons stated herein, the motions at Doc. No. 58 and Doc. No. 90 are GRANTED. Specifically, Counts III and IV of the amended counterclaim/third-party complaint at Doc. No. 57 are hereby DISMISSED. Further, Defendants Davis and Heard are DISMISSED insofar as the amended counterclaim/third-party complaint seeks to hold them liable as alter egos of the non-existent EmTech. However, Defendants Davis and Heard SHALL remain as Defendants in this action insofar as the amended counterclaim seeks to hold them liable irrespective of their allegedly being alter egos of the (non-existent) EmTech.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE